UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DANIEL R. SEIFERT :
44114 Woodmont Drive :
Leonardtown, MD  20650 :
 :
      Plaintiff :
v. :
 :
 :
DONALD C. WINTER :
Secretary of the Navy :
Washington, D.C. 20350-1000 :
 :
      Defendant :

## COMPLAINT

1. This action seeks review of the decisions of the Board for Correction of Naval Records (BCNR) dated June 21, 2004, and November 20, 2006.  Both decisions are final agency decisions under the Administrative Procedures Act (APA), 5 U.S.C. § 701, *et. seq.*

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. This Court has personal jurisdiction over the parties pursuant to 5 U.S.C. § 702.  This case presents a federal question pursuant to 5 U.S.C. § 701, *et. seq.*

3. Venue lies in this Court pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1402(a)(2).

4. By filing this complaint in this Court, plaintiff expressly waives any right or entitlement to recover back pay or other monetary damages as a remedy in this action.

## PARTIES

5.  Plaintiff served honorably as an officer in the United States Marine Corps from February 7, 1978, until his unlawful involuntary retirement on September 1, 2002.

6.  Defendant, the Honorable Donald C. Winter, is the Secretary of the Navy and is the named defendant in his official capacity only.  Because he is the officer with final authority for correction of records within the Department of the Navy, he is the proper defendant for a cause of action under the APA.

## FACTS

7.  On June 21, 2004, and November 20, 2006, the BCNR considered plaintiff's applications to correct his military records.  This action arises because the BCNR, acting for the defendant, has failed to correct errors and remove injustices that followed from the Department of the Navy's failure to comply with applicable statutes and regulations in its dealings with the plaintiff.

8.  On October 27, 1999, Lieutenant Colonel Daniel R. Seifert, the plaintiff, arrived home at 7:30 pm at his residence in military housing on the Patuxent River, Maryland, Naval Air Station.  Although the family had already finished dinner, an unfinished plate of food remained on the table.  Plaintiff's wife indicated that she had instructed her 10-year old son, plaintiff's stepson, to finish eating over 30 minutes previously.  After plaintiff had finished his dinner, the son had still not finished his.  In an attempt to discipline the stepson, the plaintiff, having failed to convince the stepson to simply eat his dinner, forced some beans into his stepson's mouth with one of his hands.

9.  Plaintiff and his wife quarreled over the incident.  After quarreling, plaintiff's wife went outside with her mother who was visiting the plaintiff's home.  After the incident had passed and

while plaintiff and his stepson were amicably working on homework together, military authorities were called to the home by plaintiff's wife.

10.     As a result of this family incident, charges related to this incident and other alleged incidents involving his family were preferred against the plaintiff, the charges were investigated pursuant to 10 U.S.C. § 832, and charges were eventually referred to a general court-martial.

11.     When plaintiff's counsel negotiated for a pre-trial agreement, counsel was informed that unless plaintiff agreed to plead guilty to all of the offenses at nonjudicial punishment (NJP), the Commanding General (CG) would simply send the case to a general court-martial for resolution of the offenses.  Even though plaintiff was convinced that the evidence would exonerate him of most offenses at a general court-martial, in order to avoid a possible federal conviction by general court-martial on any of the offenses, plaintiff opted to plead guilty to all the offenses at a NJP hearing.

12.     On December 29, 2000, more than 14 months after the unfortunate family incident, the CG, Marine Corps Base, Quantico, Virginia, pursuant to 10 U.S.C. § 815, held a NJP hearing to hear the pending military offenses stemming from the investigation of the family incident described in paragraph 8.  Pursuant to the pre-trial agreement, plaintiff pled guilty at the NJP to eleven offenses then being considered by the CG.

13.     Plaintiff was not a member of the command of the CG, Marine Corps Base, Quantico, Virginia.  Despite this fact, the CG had jurisdiction to court-martial plaintiff pursuant to the Uniform Code of Military Justice, 10 U.S.C. § 801, *et. seq.,* and naval regulations.  However, because the plaintiff was not a member of the CG's command, the CG lacked jurisdiction and authority to proceed with the NJP against the plaintiff.

14.     On March 28, 2001, relying largely upon the findings of guilt contained in the Report of

NJP, the Commandant of the Marine Corps denied a previously submitted request from plaintiff to voluntarily retire, and directed the plaintiff to show cause for retention in the U.S. Marine Corps. This proceeding was required by federal law and regulations prior to involuntarily retiring plaintiff from the Marine Corps. From June 27 through June 29, 2001, at Marine Corps Base, Quantico, Virginia, a Board of Inquiry (BOI) composed of three officers of the rank of colonel was convened to determine whether plaintiff should be involuntarily retired, and if involuntary retirement was recommended, whether he should be retired in his current grade of lieutenant colonel or the lesser grade of major. In addition to the offenses to which plaintiff pled guilty at NJP, the scope of the BOI was unlawfully expanded to include plaintiff's entire military career to include one offense occurring in 1981, one alleged offense occurring sometime between 1983 and 1992, and two other offenses previously resolved in 1996. Because of his pleas at the NJP, this BOI was the only opportunity that plaintiff had to present evidence in defense of the NJP offenses. The BOI members substantiated six of fifteen total offenses brought against plaintiff at the BOI but only four of the eleven NJP offenses. Based upon the evidence heard at the 3-day BOI hearing, the BOI recommended that plaintiff be involuntarily retired in the grade of lieutenant colonel.

15. In recommending involuntary retirement, the BOI considered the plaintiff's NJP despite the fact that it was unlawfully imposed by a CG without proper jurisdiction and authority. In addition, the BOI unlawfully considered the following evidence specifically prohibited by naval regulations: (a) alleged misconduct that was more than five years old; (b) issuance of a non-punitive letter of reprimand; and (c) a report of investigation from the Naval Criminal Investigative Service referring to two incidents for which plaintiff was either acquitted or the case was dismissed.

16.     As permitted by naval regulations, plaintiff was informed after the BOI by attorneys representing the Marine Corps who were processing this involuntary retirement recommendation that plaintiff could provide additional evidence or comments in response to the recommendation of the BOI for consideration by the Assistant Secretary of the Navy for Manpower and Reserve Affairs [ASN(M&RA)] prior to a final separation and retirement decision being made by that official.  Plaintiff informed these attorneys that he intended to provide such comments.

17.     On September 24, 2001, the CG, Marine Corps Combat Development Command, forwarded the report of the BOI to the Commandant of the Marine Corps recommending that plaintiff be retired in the grade of lieutenant colonel.

18.     On November 13, 2001, the Deputy Commandant for Manpower and Reserve Affairs, agreeing with the recommendations of the BOI and the CG, Marine Corps Combat Development Command, recommended to the ASN(M&RA) that plaintiff be involuntarily retired from the Marine Corps; and presumably relying upon criteria specifically detailed in naval regulations, specifically Secretary of the Navy Instruction 1920.6B, recommended to the ASN(M&RA) that plaintiff be retired at the grade of lieutenant colonel.

19.     On January 14, 2002, counsel for the ASN(M&RA) was notified by plaintiff's counsel that plaintiff wanted to deliver a lengthy written response to the BOI report containing new and material information contradicting and mitigating evidence contained in the BOI report for consideration by the ASN(M&RA) prior to his final decision.  Plaintiff was assured by Navy counsel that this evidence could be delivered and considered by the ASN(M&RA).  Based upon this assertion, the response was hand-carried by plaintiff and delivered personally to Navy counsel on January 16, 2002.  Despite the fact that Navy counsel knew this response was being delivered immediately, Navy counsel took no action to inform the ASN(M&RA) of the

additional evidence to be considered. As a consequence, when the ASN(M&RA) took final action on January 16, 2002, he did so without having read or considered plaintiff's written response to the BOI report.

20.     The ASN(M&RA) decided to involuntarily retire plaintiff. The decision, however, disapproved the recommendation to retire plaintiff as a lieutenant colonel, and instead, directed that plaintiff be retired in the grade of major. This decision failed to discuss any of the criteria contained in naval regulations, and specifically Secretary of the Navy Instruction 1920.6B identifying the criteria to be evaluated in order to retire plaintiff in the lower grade of major. The omission is especially glaring when all other officers in the chain of command, presumably relying upon the same criteria contained in the regulation, had recommended retirement as a lieutenant colonel.

21.     On February 12, 2002, plaintiff's counsel sent a letter to the Secretary of the Navy appealing the involuntary retirement and grade determination made by the ASN(M&RA) in plaintiff's case. This letter carefully explained that unlawful actions had been taken in plaintiff's case by noting both naval regulatory and procedural violations. This letter also detailed the misleading information that had been provided to the ASN(M&RA) that was presumably relied upon by that official to make his decision. By correspondence dated June 20, 2002, the Assistant General Counsel for Manpower and Reserve Affairs in response to plaintiff's appeal to the Secretary of the Navy informed plaintiff's counsel that the decision made by the ASN(M&RA) was final and that plaintiff could seek further review by filing a petition with the BCNR.

22.     By application dated July 17, 2002, plaintiff requested the BCNR to correct his military records relying in part on regulatory and procedural violations described above. Plaintiff specifically requested an expeditious review by the BCNR of his case prior to his proposed

involuntary retirement as a major scheduled for September 1, 2002. Plaintiff asked the BCNR to correct his record by disapproving the unlawful retirement and keeping him on active duty thereby preserving the option to process plaintiff again for involuntary retirement, but this time in a lawful manner.

23.     Despite plaintiff's request to the BCNR to act promptly in his case and without any action by the BCNR, pursuant to the direction of the ASN(M&RA), plaintiff was involuntarily retired from the Marine Corps in the grade of major effective September 1, 2002, with an honorable characterization of service. After this date, plaintiff amended his request to the BCNR to remove the now completed unlawful retirement and grade determination from his naval record thereby permitting him to return to active duty as a lieutenant colonel. This requested relief was designed to return plaintiff to the status he held prior to the unlawful retirement actions and permit the Marine Corps the option of lawfully processing plaintiff in accordance with naval regulations.

24.      By correspondence from the BCNR dated June 21, 2004, plaintiff was informed that the BCNR had denied his application to correct his naval record by refusing to remove the unlawful involuntary retirement and grade determination from his official records.

25.     On June 19, 2005, plaintiff filed a new application with new evidence to correct his military records. This application highlighted that the CG, Marine Corps Base Quantico, lacked both jurisdiction and authority to impose NJP against plaintiff. Since the unlawful NJP was part of the factual basis for plaintiff's involuntary retirement and reduction in rank, the application argued that the Secretary's consideration of the unlawful NJP rendered the involuntary retirement unlawful.

26.     On November 20, 2006, the BCNR sent plaintiff correspondence denying his application

to correct his military records. The correspondence, however, failed to mention or provide any analysis of the argument that the CG, Marine Corps Base Quantico, imposed plaintiff's NJP without having jurisdiction and authority.

## COUNT ONE

27.    The allegations contained in paragraphs 1 through 26 are incorporated herein by reference.

28.    The decisions of the BCNR dated June 21, 2004, and November 20, 2006, acting for the Secretary of the Navy, by refusing to provide full and complete relief to plaintiff, violated plaintiff's right, pursuant to 10 U.S.C. § 1552, to have his military records corrected to adequately and fully correct an error or remove an injustice. Specifically, by failing to remove the unlawful NJP and the unlawful involuntary retirement and retirement grade determinations, the decisions of the BCNR withheld and unreasonably delayed relief to which plaintiff was legally entitled. These BCNR decisions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; and were unsupported by substantial evidence, all within the authority of a reviewing court to remedy under the APA, 5 U.S.C. § 706.

## REQUEST FOR RELIEF

29.    WHEREFORE, plaintiff prays that this Court compel the defendant to

   a)    Remove from plaintiff's official military personnel file all records relating to the following: (1) plaintiff's unlawful NJP and (2) all documents referring to plaintiff's unlawful retirement and retirement grade determination.

   b)    Order that plaintiff's record be corrected to reflect that he was voluntarily retired effective September 1, 2002, as a lieutenant colonel; and

c)  Any other appropriate relief deemed necessary by this Court. Plaintiff reaffirms that he waives entitlement to any back pay as a result of any corrections made as a result of this cause of action.

d)  When properly requested, award plaintiff payment of all costs and reasonable attorney fees incurred in prosecuting this action.

                    Respectfully submitted,

                    /s/ Grant Lattin_____
                    Grant Lattin, DC Bar No. 436051
                    Lattin & Bednar, LLP
                    11970 Shorewood Court
                    Woodbridge, Virginia 22192
                    Tel: 703-490-0000
                    Fax: 703-991-0454

# CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

## I (a) PLAINTIFFS
Daniel R. Seifert

88888

## DEFENDANTS
Donald C. Winter, Secretary of the Navy

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  88888
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Grant E. Lattin, Lattin & Bednar, LLP, 11970 Shorewood Court, Woodbridge, VA 22192
Ph: 703-490-0000

CASE NUMBER  1:06CV02219
JUDGE: Reggie B. Walton
DECK TYPE: Administrative Agency Rev
DATE STAMP: 12/27/2006

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- ○ 3 Federal Question (U.S. Government Not a Party)
- ⦿ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES FOR PLAINTIFF

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and **one** in a corresponding Nature of Suit)

### ○ A. Antitrust
☐ 410 Antitrust

### ○ B. Personal Injury/Malpractice
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

### ⦿ C. Administrative Agency Review
☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☒ 890 Other Statutory Actions (If Administrative Agency is Involved)

### ○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

### ○ E. General Civil (Other)    OR    ○ F. Pro Se General Civil

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* <br><br> ☐ 530 Habeas Corpus-General <br> ☐ 510 Motion/Vacate Sentence | ○ H. *Employment Discrimination* <br><br> ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) <br><br> *(If pro se, select this deck)* | ○ I. *FOIA/PRIVACY ACT* <br><br> ☐ 895 Freedom of Information Act <br> ☐ 890 Other Statutory Actions (if Privacy Act) <br><br> *(If pro se, select this deck)* | ○ J. *Student Loan* <br><br> ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|---|---|---|---|
| ○ K. *Labor/ERISA (non-employment)* <br><br> ☐ 710 Fair Labor Standards Act <br> ☐ 720 Labor/Mgmt. Relations <br> ☐ 730 Labor/Mgmt. Reporting & Disclosure Act <br> ☐ 740 Labor Railway Act <br> ☐ 790 Other Labor Litigation <br> ☐ 791 Empl. Ret. Inc. Security Act | ○ L. *Other Civil Rights (non-employment)* <br><br> ☐ 441 Voting (if not Voting Rights Act) <br> ☐ 443 Housing/Accommodations <br> ☐ 444 Welfare <br> ☐ 440 Other Civil Rights <br> ☐ 445 American w/Disabilities- Employment <br> ☐ 446 Americans w/Disabilities- Other | ○ M. *Contract* <br><br> ☐ 110 Insurance <br> ☐ 120 Marine <br> ☐ 130 Miller Act <br> ☐ 140 Negotiable Instrument <br> ☐ 150 Recovery of Overpayment & Enforcement of Judgment <br> ☐ 153 Recovery of Overpayment of Veteran's Benefits <br> ☐ 160 Stockholder's Suits <br> ☐ 190 Other Contracts <br> ☐ 195 Contract Product Liability <br> ☐ 196 Franchise | ○ N. *Three-Judge Court* <br><br> ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- (●) 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Administrative Procedure Act, 5 USC 701, et seq. Judicial review of decisions of Board for Correction of Naval Records acting for Secretary of the Navy.

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ Waived   Check YES only if demanded in complaint
JURY DEMAND:   YES ☐   NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 12/26/06   SIGNATURE OF ATTORNEY OF RECORD _[signature]_

27

INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.