## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

DANIEL R. SEIFERT    )
         )
    Plaintiff,   )
         )
v.         )    C.A. No. 06-2219 (RBW)
         )
DONALD C. WINTER    )
         )
    Defendant.   )

## PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT
## AND
## COMBINED MEMORANDUM OF POINTS AND AUTHORITIES
## IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
## IN SUPPORT OF PLAINTIFF'S CROSS MOTION FOR SUMMARY JUDGMENT

   Plaintiff, through undersigned counsel, moves for summary judgment pursuant to Fed. R. Civ. P. 56.

### INTRODUCTION

   This action seeks review of the decisions of the Board for Correction of Naval Records (BCNR) dated June 21, 2004, and November 20, 2006.  Both decisions are final agency decisions under the Administrative Procedures Act (APA), 5 U.S.C. § 701, *et. seq.*  This action arises because the BCNR, acting for the defendant, failed to correct errors and remove injustices that followed from the Department of the Navy's failure to comply with applicable statutes and regulations in its dealings with the plaintiff.  Because the agency action failed to follow procedures required by law, the decisions of the BCNR are arbitrary and capricious and should be set aside.

## STATEMENT OF FACTS

Although defendant filed a motion for summary judgment and supporting memorandum with this Court on March 23, 2007, the defendant elected not to file an answer or other responsive pleading in response to plaintiff's complaint as required by Fed. R. Civ. P. Rule 12. Having chose not to deny any of the averments in plaintiff's complaint, pursuant to Fed. R. Civ. P. Rule 8(d), the defendant has admitted each averment in the complaint.

Plaintiff served honorably as an officer in the United States Marine Corps from February 7, 1978, until his unlawful involuntary retirement on September 1, 2002.  Complaint ¶ 5; Administrative Record (AR) 94, 397.

On October 27, 1999, Lieutenant Colonel Daniel R. Seifert, the plaintiff, arrived home at 7:30 pm at his residence in military housing on the Patuxent River, Maryland, Naval Air Station. Although the family had already finished dinner, an unfinished plate of food remained on the table.  Plaintiff's wife indicated that she had instructed her 10-year old son, plaintiff's stepson, to finish eating over 30 minutes previously.  After plaintiff had finished his dinner, the son had still not finished his.  In an attempt to discipline the stepson, the plaintiff, having failed to convince the stepson to simply eat his dinner, forced some beans into his stepson's mouth with one of his hands.  Complaint ¶ 8; AR 271.

Plaintiff and his wife quarreled over the incident.  After quarreling, plaintiff's wife went outside with her mother who was visiting the plaintiff's home.  After the incident had passed and while plaintiff and his stepson were amicably working on homework together, military authorities were called to the home by plaintiff's wife.  Complaint ¶ 9; AR 272-273.

As a result of this family incident, charges related to these events and other alleged incidents involving his family were preferred against the plaintiff. The charges were eventually referred to a general court-martial. Complaint ¶ 10; AR 147-152, 51.

When plaintiff's counsel negotiated for a pre-trial agreement, counsel was informed that unless plaintiff agreed to plead guilty to all of the offenses at a nonjudicial punishment (NJP) hearing held pursuant to 10 U.S.C. § 815, the Commanding General (CG) would simply convene a general court-martial for resolution of the offenses. Even though plaintiff was convinced that the evidence would exonerate him of most offenses at a general court-martial, in order to avoid a possible federal conviction by general court-martial on any of the offenses, plaintiff opted to plead guilty to all the offenses at a NJP hearing. Complaint ¶ 11; AR 233-235, 147 (¶2), 153-154.

On December 29, 2000, more than 14 months after the unfortunate family incident, the CG, Marine Corps Base, Quantico (MCBQ), Virginia, pursuant to 10 U.S.C. § 815, held a NJP hearing to hear the pending military offenses stemming from the investigation of the family incident described above. Pursuant to a pre-trial agreement, plaintiff pled guilty at the NJP to eleven offenses then being considered by the CG. Complaint ¶ 12; AR 153-154.

Plaintiff was not a member of the command of the CG, MCBQ. Although the CG, MCBQ was a proper authority to convene a general court-martial, the CG was statutorily prohibited from proceeding with the NJP against the plaintiff. 10 U.S.C. § 815(b)(1). As a result, the CG's NJP was imposed without proper authority and without jurisdiction. Complaint ¶ 13; AR 366, 367-372.

On March 28, 2001, relying largely upon the findings of guilt contained in the Report of NJP, the Commandant of the Marine Corps denied a previously submitted request from plaintiff

to voluntarily retire as a lieutenant colonel, and directed the plaintiff to show cause for retention in the U.S. Marine Corps. This proceeding is used to involuntarily separate any officer for cause, including those who are already eligible for retirement. Therefore, this proceeding was required by federal law and regulations prior to <u>involuntarily</u> retiring plaintiff from the Marine Corps. From June 27 through June 29, 2001, at MCBQ, a Board of Inquiry (BOI) composed of three officers of the rank of colonel was convened to determine whether plaintiff should be involuntarily retired, and if involuntary retirement was recommended, whether he should be retired in his current grade of lieutenant colonel or the lesser grade of major. In addition to the offenses to which plaintiff pled guilty at NJP, the scope of the BOI was unlawfully expanded to include plaintiff's entire military career to include one offense occurring in 1981, one alleged offense occurring sometime between 1983 and 1992, and two other offenses previously resolved in 1996. Because of his pleas at the NJP, this BOI was the only opportunity that plaintiff had to present evidence in defense of the NJP offenses. The BOI members substantiated six of fifteen total offenses brought against plaintiff at the BOI but only four of the eleven NJP offenses. Based upon the evidence heard at the 3-day BOI hearing, the BOI recommended that plaintiff be involuntarily retired in the grade of lieutenant colonel. Complaint ¶ 14; Plaintiff's Exhibit 1, AR 78-86; *see also* Plaintiff's Exhibit 3 containing SECNAVINST 1920.6B, Enclosure 6, ¶ 2 (Retirement-Eligible Officer).

    In recommending involuntary retirement, the BOI considered the plaintiff's NJP despite the fact that it was unlawfully imposed by a CG without proper jurisdiction and authority. In addition, the BOI unlawfully considered performance and conduct that was more than five years old in direct violation of naval regulation. Complaint ¶ 15; AR 83-86 (¶¶ 6, 9(i)), 78.

On September 24, 2001, the CG, Marine Corps Combat Development Command, forwarded the report of the BOI to the Commandant of the Marine Corps recommending that plaintiff be involuntarily retired in the grade of lieutenant colonel.  Complaint ¶ 17; AR 83-86.

On November 13, 2001, the Commandant of the Marine Corps (Deputy Commandant for Manpower and Reserve Affairs), agreeing with the recommendations of the BOI and the CG, Marine Corps Combat Development Command, recommended to the Assistant Secretary of the Navy for Manpower and Reserve Affairs (ASN(M&RA)) that plaintiff be involuntarily retired from the Marine Corps; and presumably relying upon criteria detailed in naval regulations, specifically Secretary of the Navy Instruction 1920.6B, recommended to the ASN(M&RA) that plaintiff be retired at the grade of lieutenant colonel.  Complaint ¶ 18; AR 87-89.

The ASN(M&RA) decided to involuntarily retire plaintiff.   The decision, however, disapproved the recommendation to retire plaintiff as a lieutenant colonel, and instead, directed that plaintiff be retired in the grade of major.   This decision failed to discuss any of the criteria contained in naval regulations, and specifically Secretary of the Navy Instruction 1920.6B identifying the criteria to be evaluated in order to retire plaintiff in the lower grade of major.  The omission is especially glaring when all other officers in the chain of command, presumably relying upon the same criteria contained in the regulation, had recommended retirement as a lieutenant colonel.  Complaint ¶ 20; AR 93.

On February 12, 2002, plaintiff's counsel sent a letter to the Secretary of the Navy appealing the involuntary retirement and grade determination made by the ASN(M&RA) in plaintiff's case.  This letter carefully explained that unlawful actions had been taken in plaintiff's case by noting both naval regulatory and procedural violations.  This letter also detailed the misleading information that had been provided to the ASN(M&RA) that was presumably relied

upon by that official to make his decision.  By correspondence dated June 20, 2002, the Assistant

General Counsel for Manpower and Reserve Affairs, in response to plaintiff's appeal to the

Secretary of the Navy, informed plaintiff's counsel that the decision made by the ASN(M&RA)

was final and that plaintiff could seek further review by filing a petition with the BCNR.

Complaint ¶ 21; AR 188-190; 364.

By application dated July 17, 2002, plaintiff requested the BCNR to correct his military

records relying in part on regulatory and procedural violations described above.  Plaintiff

specifically requested an expeditious review by the BCNR of his case prior to his proposed

involuntary retirement as a major scheduled for September 1, 2002.  Plaintiff asked the BCNR to

correct his record by disapproving the unlawful retirement and keeping him on active duty

thereby preserving the option to process plaintiff again for involuntary retirement, but this time

in a lawful manner.  Complaint ¶ 22, AR 180-183.

Despite plaintiff's request to the BCNR to act promptly in his case and without any action

by the BCNR, pursuant to the direction of the ASN (M&RA), plaintiff was involuntarily retired

from the Marine Corps in the grade of major effective September 1, 2002, with an honorable

characterization of service.  After this date, plaintiff amended his request to the BCNR to remove

the now completed unlawful retirement and grade determination from his naval record thereby

permitting him to return to active duty as a lieutenant colonel.  This requested relief was

designed to return plaintiff to the status he held prior to the unlawful retirement actions and

permit the Marine Corps the option of lawfully processing plaintiff in accordance with naval

regulations.  Complaint ¶ 23; AR 133, 397.

By correspondence from the BCNR dated June 21, 2004, plaintiff was informed that the BCNR had denied his application to correct his naval record by refusing to remove the unlawful involuntary retirement and grade determination from his official records.  Complaint ¶ 24; AR 7-8.

On June 19, 2005, plaintiff filed a new application with new evidence to correct his military records.  This application highlighted that the CG, MCBQ, lacked both jurisdiction and authority to impose NJP against plaintiff.  Since the unlawful NJP was part of the factual basis for plaintiff's involuntary retirement and reduction in rank, the application argued that the Secretary's consideration of the unlawful NJP rendered the involuntary retirement unlawful.  Complaint ¶ 25; AR 131-133 (enclosures not included); *see also* AR 20-22 (applicant's response to Marine Corps advisory opinion), AR 95-111 (exhibits from applicant's response to Marine Corps advisory opinion).

On November 20, 2006, the BCNR sent plaintiff correspondence denying his application to correct his military records.  The correspondence, however, failed to mention or provide any analysis of the argument that the CG, MCBQ, imposed plaintiff's NJP without having jurisdiction and authority.  Complaint ¶ 26; AR 118-119.

## STANDARDS OF REVIEW

## I.  SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted when a moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002); *Muwekma Ohlone Tribe v. Kempthorne*, 452 F. Supp. 2d 105, 113 (D.D.C. 2007).  In

determining whether a genuine issue of material fact exists, the court must view all facts in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Holcomb v. Powell*, 433 F.3d 889 (D.C. Cir. 2006); *Muwekma Ohlone Tribe,* 452 F. Supp. 2d at 113. The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp*., 477 U.S. at 324; *Burke v Gould*, 286 F.3d 513, 517 (D.C. Cir. 2002); *Muwekma Ohlone Tribe,* 452 F. Supp. 2d at 113.

In ruling on cross-motions for summary judgment, the court grants summary judgment only if one of the moving parties is entitled to judgment as a matter of law upon material facts that are not genuinely disputed. *Id*. (quoting *Shays v. FEC*, 424 F. Supp. 2d 100, 109 (D.D.C. 2006)). Courts in this Circuit have repeatedly recognized that summary judgment is an appropriate procedure when a court reviews an agency's administrative record. *Muwekma Ohlone Tribe,* 452 F. Supp. 2d at 114 (citing *Shays*, 424 F. Supp. 2d at 109-110); *Bloch v. Powell*, 227 F. Supp. 2d 25, 30-31 (D.D.C. 2002) (citing *Fund for Animals v. Babbitt*, 903 F. Supp. 96, 105 (D.D.C. 1995)).

## II.  REVIEW OF AGENCY DECISION UNDER APA

When reviewing agency action pursuant to the APA, the Court must determine whether the challenged decision is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 414 (1971); *Delano v. Roche*, 2006 U.S. Dist. LEXIS 66860, 14 (D.D.C. 2007); *Muwekma Ohlone Tribe,* 452 F. Supp. 2d at 114. Under the "arbitrary and capricious" scope of review, the court must give the agency's decision due deference and is not empowered to

"substitute its judgment" for that of the agency.  *Citizens to Preserve Overton Park, Inc*, 401

U.S. at 415-416; *Muwekma Ohlone Tribe,* 452 F. Supp. 2d at 114 (quoting *Motor Vehicle Mfrs.*

*Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (U.S. 1983)).  Moreover, a military

correction board, like the BCNR, is afforded a higher level of deference than civilian

administrative agencies*. Kreis v. Air Force*, 866 F.2d 1508, 1514-1515 (D.C. Cir. 1989); *Delano*

*v. Roche*, 2006 U.S. Dist. LEXIS 66860, 14.  Nevertheless, an agency action is arbitrary and

capricious if the agency failed to follow procedure required by law or has entirely failed to

consider an important aspect of the case presented to them. *Delano v. Roche*, 2006 U.S. Dist.

LEXIS 66860, 14; *Calloway v. Brownlee*, 366 F. Supp. 2d 43, 53 (D.D.C. 2005) (citing *Motor*

*Vehicle Mfrs. Ass'n,* 463 U.S. at 43).

 Although the agency's action is entitled to deference and a presumption of regularity, this

Court must engage in a "thorough, probing, in-depth review" to determine "whether the decision

was based on a consideration of the relevant factors and whether there has been a clear error of

judgment." *Citizens to Preserve Overton Park*, 401 U.S. at 415-16.  Moreover, even in matters of

agency expertise, "the degree of deference a court should pay an agency's constructions . . . is

affected by the thoroughness, validity and consistency of [the] agency's reasoning." *Muwekma*

*Ohlone Tribe,* 452 F. Supp. 2d at 114-115; *FEC v. Democratic Senatorial Campaign Comm.*,

454 U.S. 27, 37 (1981).  To survive review, the agency is required to examine the relevant data

and articulate a satisfactory explanation for its action including a "rational connection between

the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n,* 463 U.S. 29, 43 (citing

*Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962)).

 In addition, under the APA, review of the agency's decision is limited to the

administrative record that was before the agency at the time the decision was made.  *Florida*

*Power & Light v. Lorion*, 470 U.S. 729, 743-744, (1985); *Camp v. Pitts*, 411 U.S. 138, 142

(1973) *Muwekma Ohlone Tribe,* 452 F. Supp. 2d at 114 (string citations omitted).  Moreover,

agency action "must be upheld, if at all, on the basis articulated by the agency itself."  *S. Co.*

*Servs. v. FERC*, 416 F.3d 39, 47 (D.C. Cir. 2005) (quoting *Motor Vehicle Mfrs. Ass'n,* 463 U.S.

at 50).  Post-hoc rationalizations supplied by appellate counsel may not be substituted for the

agency's own explanation.  *El Rio Santa Cruz Neighborhood Health Ctr. v. United States HHS*,

396 F.3d 1265, 1276 (D.C. Cir. 2005) (citing *Burlington Truck Lines*, 371 U.S. at 168-69).


**ARGUMENT**

**I.      PLAINTIFF'S INVOLUNATARY RETIREMENT AND REDUCTION IN RANK
        WERE UNLAWFUL BECAUSE THEY VIOLATED PERTINENT STATUTES
        AND REGULATIONS.**

        The Department of the Navy, including the Marine Corps, like other military departments

and agencies in general, is bound to follow its own regulations.  *Frizelle v. Slater*, 111 F.3d 172,

177 (D.C. Cir. 1997) (citing *Service v. Dulles*, 354 U.S. 363, 388 (1957); *Ortiz v. Secretary of*

*Defense*, 41 F.3d 738, 741 (D.C. Cir. 1994); *Ingram Barge Co. v. United States*, 884 F.2d 1400,

1405 (D.C. Cir. 1989).  In this case, plaintiff's involuntary retirement and reduction in rank

followed only after instances in which applicable statutes and regulations had been violated.

**A.      PLAINTIFF'S INVOLUNTARY RETIREMENT AND REDUCTION IN
        RANK WERE UNLAWFUL BECAUSE THE ACTIONS CONSIDERED
        AND RELIED UPON PLAINTIFF'S RECEIPT OF NON-JUDICIAL
        PUNISHMENT THAT WAS IMPOSED WITHOUT JURISIDCTION.**

        Pursuant to 10 U.S.C. § 815(b)(1) a commanding officer may only impose NJP "*upon*

*officers of his command*." (Emphasis added); AR 95.  Military and Naval regulations

implementing this statute are consistent with the statute in both clarifying and restricting the

authority to impose NJP to commanding officers upon personnel within their command.  *See*

*e.g.,* Manual for Courts-Martial (MCM), Part V, ¶2.a, AR 101; Manual of the Judge Advocate General (JAGMAN) § 0106.a, AR 105; The Marine Corps Legal Administration Manual (LEGALADMINMAN) ¶¶ 3000.1, 3001.1, AR 110; *see also* AR 20-22 (containing plaintiff's response to the September 19, 2005, Marine Corps advisory opinion submitted to the BCNR).

In this case, NJP was imposed upon plaintiff by the CG, MCBQ.  AR 58-59.  It is undisputed that plaintiff was not a member of this command.  AR 366, 367-371; *see also* AR 18 (Marine Corps advisory opinion to BCNR noting that plaintiff was assigned to the Commander for the Marine Aviation Detachment, Naval Air Systems Command, Patuxent River, Maryland). Plaintiff wishes to emphasize that the defendant and those to whom he has delegated authority have never suggested or asserted that the plaintiff was a member of the command that imposed the NJP.  As a result, the legal conclusion inescapably follows that the NJP imposed upon plaintiff was jurisdictionally defective.  Accordingly, when the jurisdictionally defective NJP was considered in the decision to involuntarily retire plaintiff and reduce his retired rank, the defendant failed to follow procedures required by law.

In its decision dated November 20, 2006, the BCNR, made absolutely no mention and provided no analysis of the plaintiff's argument asserting that his NJP was imposed without jurisdiction.  AR 118-119; *see also* AR 4-5, 20-22.  After providing a general description of plaintiff's submissions and evidence, the BCNR stated:

> After careful and conscientious consideration of the entire record, the Board found that the evidence submitted was insufficient to establish the existence of probable material error or injustice.  In this connection, the Board substantially concurred with the comments in the advisory opinion.  *In this regard*, the Board found that even though some of the offenses you received nonjudicial (NJP) for may have occurred outside the two year statutory limitations, this is not a basis to remove the entire NJP.  Finally, Board found that all of your instances of misconduct which were found to have occurred by your board of inquiry occurred or were identified during the five year regulatory limitation period.  *In view of the above*, your application has been denied.

*Id.* (emphasis added).

Although the BCNR stated it "substantially concurred with the comments in the advisory opinion," the BCNR neglected to reference the findings or analysis in the advisory opinion relating to the lack of jurisdiction to impose the NJP. As noted from the language quoted above, the BCNR limited its concurrence with the advisory opinion by using the language "in this regard" and then specifically commenting on arguments related to misconduct asserted to have been outside of applicable time periods. The BCNR then concluded that "in view of the above", referring to the conclusions about the timing of the misconduct, the plaintiff's application was denied.

In this case, the BCNR failed to consider the lack of jurisdiction to impose NJP, an important aspect of the case presented to them. Accordingly, its decision is arbitrary and capricious. *Delano v. Roche*, 2006 U.S. Dist. LEXIS 66860, 14; *Calloway v. Brownlee*, 366 F. Supp. 2d at 53; *see also Frizelle v. Slater*, 11 F.3d at 177. In this case, however, a remand to the BCNR is not required because the BCNR has already requested and received a Marine Corps advisory opinion on this issue. Moreover, given that the essential facts relating to this issue are undisputed, the issue of jurisdiction is a legal question that this Court may address in the first instance. Because jurisdiction is a legal question, the BCNR has no particular expertise in addressing this question to which it would be owed deference by this Court.

Even if the Court assumes that the BCNR adopted the analysis of the advisory opinion relating to jurisdiction or addresses the matter in the first instance, the conclusion is inescapable that the imposition of NJP upon the plaintiff was jurisdictionally defective. The September 19, 2005, Marine Corps advisory opinion requested by the BCNR suggests that plaintiff's

12

jurisdictional argument should fail "considering the facts and progression of this case."  AR 18.

The advisory opinion then relates that plaintiff's case was referred to the CG, MCBQ, in order to

convene a general court martial but that the court-martial charges were dismissed when plaintiff

agreed to plead guilty at NJP.  AR 18-19.  Plaintiff concedes that the CG, MCBQ, had

jurisdiction and was a proper authority to convene a general court martial.  There is no dispute on

this issue.  However, the fact that plaintiff agreed to plead guilty at NJP in order to avoid a

general court martial could not confer jurisdiction upon the CG, MCBQ, to impose NJP.

Jurisdiction must be granted by statute or regulation.  The military's own Manual for Courts-

Martial, Rule 705 (Pretrial agreements) explicitly confirms that plaintiff's pretrial agreement

could neither consent to jurisdiction or waive a jurisdictional defect.  AR 102.  Rule 705(c)

specifically states that "the accused may waive many matters *other than jurisdiction*."

(Emphasis added).  In short, "the facts and progression of the case" notwithstanding, the only

relevant fact on the issue of the CG's jurisdiction to impose NJP upon plaintiff is whether the

plaintiff was a member of the CG's command.  Since it is undisputed that plaintiff was not a

member of the CG's command, the CG lacked jurisdiction to impose NJP.  Accordingly, the

plaintiff's NJP must be considered jurisdictionally defective.

Because the jurisdictionally defective NJP was considered in the decisions to

involuntarily retire plaintiff and reduce his rank, those decisions were unlawful and failed to

follow procedure required by law.  As detailed in plaintiff's statement of facts, after the

imposition of the unlawful NJP, the Commandant of the Marine Corps directed the plaintiff to

show cause for retention in the U.S. Marine Corps.  Plaintiff's Exhibit 1.  A BOI was convened

to determine whether plaintiff should be involuntarily retired, and if involuntary retirement was

recommended, whether he should be retired in his current grade of lieutenant colonel or the

lesser grade of major.  *Id.*  The BOI concluded by recommending that plaintiff be involuntarily

retired in the grade of lieutenant colonel.  In recommending involuntary retirement, the BOI

considered the plaintiff's unlawfully imposed NJP.  AR 83-86 (¶¶ 6, 9(i)).  In endorsing the BOI

recommendations and making his recommendation to the Assistant Secretary of the Navy, the

Commandant of the Marine Corps likewise considered the unlawfully imposed NJP.  AR 87-89

(¶¶ 3, 5).  After reviewing the Report of the BOI and the endorsement of the Commandant of the

Marine Corps, the Assistant Secretary of the Navy (M&RA) directed the involuntary retirement

of plaintiff and reduced his rank from lieutenant colonel to major.  AR 93.  In doing so, the

ASN(M&RA) cited the seriousness of the plaintiff's conduct, which necessarily included the

unlawfully imposed NJP.  *Id.*  As a result of the unlawfully imposed NJP, the entire process that

led to plaintiff's involuntary retirement and reduction in rank became tainted.  Because the

October 5, 2005, decision of the BCNR refused to correct the error or injustice that resulted from

the agency's failure to comply with applicable statutes and regulations, this Court should

conclude that the decision was arbitrary and capricious and set it aside.


       B.      **PLAINTIFF'S INVOLUNTARY RETIREMENT WAS UNLAWFUL BECAUSE THE BOI CONSIDERED AND SUBSTANTIATED ALLEGED ACTS OF MISCONDUCT THAT WERE TIME BARRED BY NAVAL REGULATION.**

      In his initial application to the BCNR, plaintiff asserted that the BOI unlawfully

considered performance and conduct that had taken place more than five years before the

initiation of the BOI, a violation of naval regulation.   SECNAVINST 1920.6B, Enclosure (4),

¶10.e, provides:

> e. Performance or conduct identified more than 5 years prior to the initiation of
> processing for separation under paragraph 2 of this enclosure shall not form the
> basis for processing under this enclosure.

AR 115.

In its decision dated June 21, 2004, the BCNR failed to respond to plaintiff's argument. AR 7. The decision indicated, however, that BCNR "substantially concurred with the comments contained in the [Marine Corps] advisory opinion." *Id.*; *see also* AR 9-15 (advisory opinion). The advisory opinion cited the provisions of SECNAVINST 1920.6B Enclosure (4), ¶ 10.e, but then reasoned that conduct and performance more than five years old could properly be considered for retirement grade determinations, character of service, and other matters not related to plaintiff's involuntary separation. AR 13. Without examining the purpose for which the performance and conduct beyond the five-year limitation was actually used by the BOI, the advisory opinion then improperly concluded that since matters beyond the five-year limitation could, in some instances, be properly considered, the BOI's consideration of time-barred conduct was not improper in plaintiff's case. *Id*.

The analysis offered by the advisory opinion is fatally flawed because it failed to examine the administrative record to determine the purpose for which the time-barred conduct was actually considered. Although plaintiff agrees that performance and conduct beyond the five-year limitation may be properly considered for matters other than processing for separation, in this case, the time-barred conduct was explicitly relied upon in considering plaintiff's separation, the very purpose that is explicitly prohibited. Moreover, the administrative record contains no evidence to suggest that the time-barred conduct was used for any purpose other than plaintiff's involuntary retirement/separation. Accordingly, the BOI's consideration of time-barred performance and conduct violated applicable law and was unlawful.

A comparison of the grounds for involuntary separation identified in SECNAVINST 1920.6B, Enclosure (3), ¶¶ 1.a(1), 1.a(3) and 1.b(1) with the BOI Findings Worksheets

conclusively demonstrates that the time-barred conduct was impermissibly used to consider plaintiff's involuntary retirement/separation. Plaintiff's Exhibit 2; AR 78-82.

Respectively, the provisions of ¶¶ 1.a(1), 1.a(3) and 1.b(1) provide for involuntary separation based upon "[f]ailure to demonstrate acceptable qualities of leadership required of an officer in the member's grade," "[f]ailure to properly discharge duties expected of officers of the member's grade and experience," and "[c]ommission of a military or civilian offense which could be punished by confinement of 6 months or more and any other misconduct which would require specific intent for conviction." Plaintiff's Exhibit 2; *see also* AR 83-84. An examination of the BOI Findings Worksheets, specifically the headings identified as I and II, reveal that the BOI determined that plaintiff should be involuntarily separated based upon the exact language found in ¶¶ 1.a(1), 1.a(3) and 1.b(1). AR 78. In substantiating the requirements for ¶ 1.b(1) (commission of an offense), the BOI Finding Worksheets specifically identifies that it relied upon a violation of Article 128 in that plaintiff, "[i]n 1981, unlawfully assult[ed] Ms Carrasquillo, by choking her. *Id*. Obviously, plaintiff's conduct in 1981 is beyond the five year time limitation imposed by SECNAVINST 1920.6B, Enclosure (4), ¶10.e, when the BOI was convened on June 21, 2001.

Additional evidence that the time-barred conduct was impermissibly used to consider plaintiff's involuntary retirement is demonstrated in the BOI Recommendation, also contained in the Findings Worksheet. AR 79. After specifically referencing the conduct beyond the five year time limitation (choking Ms Carrasquillo), the BOI then stated: "By majority vote, the Board of Inquiry recommends that Lieutenant Colonel Seifert be retired for the reasons listed above." *Id*. Only after it had made the recommendation that plaintiff should be involuntarily retired, based in

part of on time-barred conduct, did the Board next consider and recommend that plaintiff be retired in his current grade of Lieutenant Colonel.

A preliminary BOI Findings Worksheet also demonstrates that the BOI considered an additional instance of time-barred conduct. AR 81. Although the BOI ultimately failed to substantiate the specification, the BOI impermissibly considered whether plaintiff: "Between 1983-1992, [did] unlawfully strike Edith Seifert on diverse occasions, by hitting and choking." *Id*. Although, this specification was not substantiated, the fact remains that the prejudice to the plaintiff in the ultimate decision to recommend his involuntary separation can neither be dismissed nor discounted without resorting to unsubstantiated speculation.

Because the administrative record demonstrates that time-barred conduct was used to consider plaintiff's involuntary separation in direct violation of SECNAVINST 1920.6B, Enclosure (4), ¶10.e, the agency action is arbitrary and capricious because it failed to follow procedure required by law. Accordingly, this Court should set aside the June 21, 2004, decision of the BCNR.

###    C.    PLAINTIFF'S REDUCTION IN RANK WAS IMPROPER BECAUSE THE ASN(M&RA) FAILED TO COMPLY WITH SECNAVINST 1920.6B.

The military, like other federal agencies, is obligated not only to comply with applicable regulations, *Frizelle v. Slater*, 111 F.3d at 177, but also to cogently explain why it has exercised its discretion in a given manner." *Motor Vehicle Mfrs*, 463 U.S. at 48 .

SECNAVINST 1920.6B, Enclosure (6), provides guidelines on recommendations for retirement grade determinations. Paragraph 1(a) states in pertinent part:

> a. General Guidance. A recommendation that an officer has or has not served satisfactorily in the grade currently held should *be based on a determination made after considering all relevant factors*, such as the nature of the misconduct and its effect on professional performance.

(Emphasis added).  Paragraph 1(b) of the regulation then identifies appropriate factors to

be considered and balanced when making the determination:

> b.  Specific Factors. In considering whether an officer served satisfactorily in the grade currently held, the following factors should normally be considered:
>
> > (1) Nature and severity of the misconduct;
>
> > (2) The misconduct and its relation to, and effect on the performance of military duties.
>
> > (3) All fitness reports and other portions of the service record which reflect performance in the current grade. In this regard it is appropriate to consider whether the misconduct was known by reporting seniors, and if not, what effect, if any, it might have had on the officer's record.
>
> > (4) Time in current grade, and relation between such time and the time of misconduct.
>
> > (5) Other relevant matters presented either by the record or the officer.
>
> > (6) Chain of command recommendations.

Plaintiff's Exhibit 3.

As previously noted, after his BOI determined he should be separated, plaintiff was

recommended for involuntary retirement in the rank of lieutenant colonel.  The BOI

recommendation was, in turn, endorsed by the Commandant of the Marine Corps.  Both

recommendations were forwarded to the ASN(M&RA) who had the final decision authority.

Although the ASN(M&RA) was not bound to accept the recommendations of the BOI and the

Commandant of the Marine Corps, he was bound to comply with SECNAVINST 1920.6B in

making his decision.  The ASN(M&RA) rejected the recommendations to retire plaintiff in the

rank of lieutenant colonel and instead involuntarily retired plaintiff in the lower rank of major.

His decision, however, limited its explanation to the fact that it was "due to the seriousness of the

misconduct involved." AR 93.   This abbreviated explanation fails to comply with the

requirements of SECNAVINST 1920.6B for two reasons.

First, contrary to the requirements of ¶¶ 1(a) and 1(b)(1), but through no fault of his own,

it was not possible for the ASN(M&RA) to fairly consider all relevant factors, especially the

nature of the misconduct, since he was unaware that plaintiff's NJP was jurisdictionally defective

and could not properly be considered when assessing the nature of the misconduct.   Second,

contrary to the requirement of ¶ 1(b), the ASN(M&RA) provided no indication that he

considered or balanced any of the specific factors specified in the regulation.   This omission is

especially glaring in the face of the contrary recommendations from both the BOI and the

Commandant of the Marine Corps who were obligated to make their recommendations based

upon the exact same criteria.   Although plaintiff concedes that the ASN(M&RA) was not bound

to accept the recommendations presented to him, plaintiff insists the ASN(M&RA) was bound to

follow the requirements of the regulation.

In its decision dated June 21, 2004, the BCNR merely stated:

> After careful and conscientious consideration of the entire record, the Board
> found that the evidence submitted was insufficient to establish the existence of
> probable material error or injustice.  In this connection, the Board substantially
> concurred with the comments contained in the advisory opinion.  The Board
> particularly noted that it is unfortunate that your misconduct resulted in a loss of
> pension income to your family. Accordingly, your application has been denied.

AR 7.   The advisory opinion, relied upon by the BCNR, acknowledged plaintiff's argument but

concluded that because language of SECNAVINST 1920.6B, Enclosure 6, ¶ 1(b), specifies that

the factors "should normally be considered," the ASN(M&RA) was not required to explain his

decision "thus permitting the ASN(M&RA) significant latitude and discretion when acting on

separation cases."  AR 12.

The position of the advisory opinion is both illogical and contrary to law. The fact that a decision maker is required to explain his decision does not, even in the least, impinge on the latitude and discretion entrusted to him or her. On the contrary, it only ensures that decisions are rationally connected to the facts found and are not arbitrary and capricious. As the Court strikingly observed in *United States v. North*, 910 F.2d 843, 881 (D.C. Cir.1990), *cert. denied*, 500 U.S. 941 (1991), "the very premise of appellate review is that reasoning matters." In this case, neither the ASN(M&RA) nor the BCNR have provided this Court any explanation that demonstrates why the decision to involuntarily retire plaintiff in the rank of major was appropriate in the face of competing factors that each favored different outcomes. As the Supreme Court has held, the agency is required to examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs*, 463 U.S. at 43 (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. at 168 (1962)); *see also, Alpharma,* 460 F.3d at 6 (D.C. Cir. 2006). Accordingly, the "agency must cogently explain why it has exercised its discretion in a given manner," and that explanation must be "sufficient to enable [a reviewing court] to conclude that the agency's action was the product of reasoned decisionmaking." *Id*. at 48, 52. Where, as here, the agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, the court must undo the agency's action. *Petroleum Communications v. FCC*, 22 F.3d 1164, 1172 (D.C. Cir. 1994).

## CONCLUSION

The plaintiff's involuntary retirement and reduction in rank were unlawful because those actions failed to comply with applicable statutes and regulations. The decisions of the BCNR

declining to correct plaintiff's record are arbitrary and capricious and should be set aside with an order from this Court compelling the defendant to correct plaintiff's military records by:

a) removing all records relating to plaintiff's unlawful NJP, processing of or recommendations for plaintiff's involuntary retirement, and plaintiff's reduction in rank at retirement;

b) ordering that plaintiff's record be corrected to reflect that he was voluntarily retired effective September 1, 2002, as a lieutenant colonel; or alternatively, that plaintiff be reinstated to active duty as a lieutenant colonel effective September 1, 2002, the date of his unlawful retirement; or

c) ordering, if the Court determines that the retirement/discharge was lawful but the retirement grade determination was unlawful, the Secretary of the Navy to remove from plaintiff's official military personnel file all records and correspondence related to plaintiff's reduction in rank to major at retirement, and

d) ordering any other appropriate relief deemed necessary by this Court.

For the foregoing reasons, the Court should grant the plaintiff's cross motion for summary judgment, deny the defendant's motion for summary judgment, and enter judgment in favor of the plaintiff.

Respectfully submitted,

 /s/ Grant Lattin
Grant Lattin, DC Bar # 436051
Counsel for Plaintiff
Lattin & Bednar, LLP
11970 Shorewood Court
Woodbridge, Virginia 22192
Phone: (703) 490-0000
Fax: (703) 991-0454
Email: GLattin@ArmedForcesLaw.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DANIEL R. SEIFERT | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-2219 (RBW) |
| | ) | |
| DONALD C. WINTER | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S STATEMENT OF MATERIAL FACTS
## TO WHICH THERE EXISTS NO GENUINE ISSUE

Pursuant to LCvR 7(h) and 56.1, and in support of his Cross-Motion for Summary Judgment, plaintiff files this Statement of Material Facts to Which There Exists No Genuine Issue. Defendant has already filed a Statement of Material Facts to Which There Is No Genuine Issue. In response to defendant's statement and in support of Plaintiff's Opposition to Defendant's Motion for Summary Judgment, plaintiff has filed on this same date a Statement of Material Facts to Which There Exists a Genuine Issue.

Although defendant filed a motion for summary judgment and supporting memorandum with this Court on March 23, 2007, the defendant elected not to file an answer or other responsive pleading in response to plaintiff's complaint as required by Fed. R. Civ. P. Rule 12. Having chose not to deny any of the averments in plaintiff's complaint, pursuant to Fed. R. Civ. P. Rule 8(d), the defendant has admitted each averment in the complaint.

1.    Plaintiff served honorably as an officer in the United States Marine Corps from February 7, 1978, until his unlawful involuntary retirement on September 1, 2002. Complaint ¶ 5, Administrative Record (AR) 94, 397.

2.      On October 27, 1999, Lieutenant Colonel Daniel R. Seifert, the plaintiff, arrived home at 7:30 pm at his residence in military housing on the Patuxent River, Maryland, Naval Air Station. Although the family had already finished dinner, an unfinished plate of food remained on the table.  Plaintiff's wife indicated that she had instructed her 10-year old son, plaintiff's stepson, to finish eating over 30 minutes previously.  After plaintiff had finished his dinner, the son had still not finished his.  In an attempt to discipline the stepson, the plaintiff, having failed to convince the stepson to simply eat his dinner, forced some beans into his stepson's mouth with one of his hands.  Complaint ¶ 8; AR 271.

3.      Plaintiff and his wife quarreled over the incident.  After quarreling, plaintiff's wife went outside with her mother who was visiting the plaintiff's home.  After the incident had passed and while plaintiff and his stepson were amicably working on homework together, military authorities were called to the home by plaintiff's wife.  Complaint ¶ 9; AR 272-273.

4.      As a result of this family incident, charges related to these events and other alleged incidents involving his family were preferred against the plaintiff.  The charges were eventually referred to a general court-martial.  Complaint ¶ 10; AR 147-152, 51.

5.      When plaintiff's counsel negotiated for a pre-trial agreement, counsel was informed that unless plaintiff agreed to plead guilty to all of the offenses at nonjudicial punishment (NJP), the Commanding General (CG) would simply send the case to a general court-martial for resolution of the offenses.  Even though plaintiff was convinced that the evidence would exonerate him of most offenses at a general court-martial, in order to avoid a possible federal conviction by general court-martial on any of the offenses, plaintiff opted to plead guilty to all the offenses at a NJP hearing.  Complaint ¶ 11; AR 233-235, 147 (¶2), 153-154.

6.    On December 29, 2000, more than 14 months after the unfortunate family incident, the CG, Marine Corps Base, Quantico (MCBQ), Virginia, pursuant to 10 U.S.C. § 815, held a NJP hearing to hear the pending military offenses stemming from the investigation of the family incident described above.  Pursuant to a pre-trial agreement, plaintiff pled guilty at the NJP to eleven offenses then being considered by the CG.  Complaint ¶ 12; AR 153-154.

7.    Plaintiff was not a member of the command of the CG, MCBQ.  Although the CG, MCBQ, was a proper authority to convene a general court-martial, pursuant to 10 U.S.C. § 815(b)(1) the CG was statutorily prohibited from proceeding with the NJP against the plaintiff. As a result, the CG's  NJP was imposed without proper authority and without jurisdiction. Complaint ¶ 13; AR 366, 367-372.

8.    On March 28, 2001, relying largely upon the findings of guilt contained in the Report of NJP, the Commandant of the Marine Corps denied a previously submitted request from plaintiff to voluntarily retire, and directed the plaintiff to show cause for retention in the U.S. Marine Corps.  This proceeding was required by federal law and regulations prior to involuntarily retiring plaintiff from the Marine Corps.  From June 27 through June 29, 2001, at MCBQ, a Board of Inquiry (BOI) composed of three officers of the rank of colonel was convened to determine whether plaintiff should be involuntarily retired, and if involuntary retirement was recommended, whether he should be retired in his current grade of lieutenant colonel or the lesser grade of major.  In addition to the offenses to which plaintiff pled guilty at NJP, the scope of the BOI was unlawfully expanded to include plaintiff's entire military career to include one offense occurring in 1981, one alleged offense occurring sometime between 1983 and 1992, and two other offenses previously resolved in 1996.  Because of his pleas at the NJP, this BOI was the only opportunity that plaintiff had to present evidence in defense of the NJP offenses.  The

BOI members substantiated six of fifteen total offenses brought against plaintiff at the BOI but only four of the eleven NJP offenses. Based upon the evidence heard at the 3-day BOI hearing, the BOI recommended that plaintiff be involuntarily retired in the grade of lieutenant colonel. Complaint ¶ 14; Plaintiff's Exhibit 1, AR 78-86; *see also* Plaintiff's Exhibit 3 containing SECNAVINST 1920.6B, Enclosure 6, ¶ 2 (Retirement-Eligible Officer).

9.     In recommending involuntary retirement, the BOI considered the plaintiff's NJP despite the fact that it was unlawfully imposed by a CG without proper jurisdiction and authority. In addition, the BOI unlawfully considered performance and conduct that was more than five years old in direct violation of naval regulation. Complaint ¶ 15; AR 83-86 (¶¶ 6, 9(i)), 78.

10.     On September 24, 2001, the CG, Marine Corps Combat Development Command, forwarded the report of the BOI to the Commandant of the Marine Corps recommending that plaintiff be retired in the grade of lieutenant colonel. Complaint ¶ 17; AR 83-86.

11.     On November 13, 2001, the Commandant of the Marine Corps (Deputy Commandant for Manpower and Reserve Affairs), agreeing with the recommendations of the BOI and the CG, Marine Corps Combat Development Command, recommended to the Assistant Secretary of the Navy for Manpower and Reserve Affairs (ASN(M&RA)) that plaintiff be involuntarily retired from the Marine Corps; and presumably relying upon criteria detailed in naval regulations, specifically Secretary of the Navy Instruction 1920.6B, recommended to the ASN(M&RA) that plaintiff be retired at the grade of lieutenant colonel. Complaint ¶ 18; AR 87-89.

12.     The ASN(M&RA) decided to involuntarily retire plaintiff. The decision, however, disapproved the recommendation to retire plaintiff as a lieutenant colonel, and instead, directed that plaintiff be retired in the grade of major. This decision failed to discuss any of the criteria contained in naval regulations, and specifically Secretary of the Navy Instruction 1920.6B

identifying the criteria to be evaluated in order to retire plaintiff in the lower grade of major. The omission is especially glaring when all other officers in the chain of command, presumably relying upon the same criteria contained in the regulation, had recommended retirement as a lieutenant colonel. Complaint ¶ 20; AR 93.

13.    On February 12, 2002, plaintiff's counsel sent a letter to the Secretary of the Navy appealing the involuntary retirement and grade determination made by the ASN(M&RA) in plaintiff's case. This letter carefully explained that unlawful actions had been taken in plaintiff's case by noting both naval regulatory and procedural violations. This letter also detailed the misleading information that had been provided to the ASN(M&RA) that was presumably relied upon by that official to make his decision. By correspondence dated June 20, 2002, the Assistant General Counsel for Manpower and Reserve Affairs, in response to plaintiff's appeal to the Secretary of the Navy, informed plaintiff's counsel that the decision made by the ASN(M&RA) was final and that plaintiff could seek further review by filing a petition with the BCNR. Complaint ¶ 21; AR  188-190; 364.

14.    By application dated July 17, 2002, plaintiff requested the BCNR to correct his military records relying in part on regulatory and procedural violations described above. Plaintiff specifically requested an expeditious review by the BCNR of his case prior to his proposed involuntary retirement as a major scheduled for September 1, 2002. Plaintiff asked the BCNR to correct his record by disapproving the unlawful retirement and keeping him on active duty thereby preserving the option to process plaintiff again for involuntary retirement, but this time in a lawful manner. Complaint ¶ 22, AR 180-183.

15.    Despite plaintiff's request to the BCNR to act promptly in his case and without any action by the BCNR, pursuant to the direction of the ASN(M&RA), plaintiff was involuntarily retired

from the Marine Corps in the grade of major effective September 1, 2002, with an honorable characterization of service. After this date, plaintiff amended his request to the BCNR to remove the now completed unlawful retirement and grade determination from his naval record thereby permitting him to return to active duty as a lieutenant colonel. This requested relief was designed to return plaintiff to the status he held prior to the unlawful retirement actions and permit the Marine Corps the option of lawfully processing plaintiff in accordance with naval regulations. Complaint ¶ 23; AR 133, 397.

16.     By correspondence from the BCNR dated June 21, 2004, plaintiff was informed that the BCNR had denied his application to correct his naval record by refusing to remove the unlawful involuntary retirement and grade determination from his official records. Complaint ¶ 24; AR 7-8.

17.     On June 19, 2005, plaintiff filed a new application with new evidence to correct his military records. This application highlighted that the CG, MCBQ, lacked both jurisdiction and authority to impose NJP against plaintiff. Since the unlawful NJP was part of the factual basis for plaintiff's involuntary retirement and reduction in rank, the application argued that the Secretary's consideration of the unlawful NJP rendered the involuntary retirement unlawful. Complaint ¶ 25; AR 131-133 (enclosures not included); *see also* AR 20-22 (applicant's response to Marine Corps advisory opinion ), AR 95-111 (exhibits from applicant's response to Marine Corps advisory opinion).

18.     On November 20, 2006, the BCNR sent plaintiff correspondence denying his application to correct his military records. The correspondence, however, failed to mention or provide any

analysis of the argument that the CG, MCBQ, imposed plaintiff's NJP without having

jurisdiction and authority.  Complaint ¶ 26; AR 118-119.


Respectfully submitted,

 /s/ Grant Lattin_____
Grant Lattin, DC Bar # 436051
Lattin & Bednar, LLP
Counsel for Plaintiff
11970 Shorewood Court
Woodbridge, Virginia 22192
Phone: (703) 490-0000
Fax: (703) 991-0454
Email: GLattin@ArmedForcesLaw.com



**DEPARTMENT OF THE NAVY**
HEADQUARTERS UNITED STATES MARINE CORPS
2 NAVY ANNEX
WASHINGTON, DC 20380-1775

IN REPLY REFER TO:

1920
JAMO

From:    Commandant of the Marine Corps
To:      Commanding General, Marine Corps Base, Quantico

Subj:    BOARD OF INQUIRY IN THE CASE OF LIEUTENANT COLONEL
         DANIEL R. SEIFERT, 339 46 9775/7543 USMC

Ref:     (a) SECNAVINST 1920.6B
         (b) CG, MCB Quantico ltr 1920 BO52 of 29 Dec 00
         (c) LtCol Seifert ltr 1920 BO52 of 29 Dec 00

1.  Pursuant to paragraph 13d of reference (a), I have been
designated the Show Cause Authority for the Marine Corps.  In
that capacity, I have reviewed the recommendation in reference
(b) and Lieutenant Colonel Seifert's retirement request in
reference (c).  Since Lieutenant Colonel Seifert's retirement
request is conditional, and therefore not in compliance with
reference (a), it is denied.

2.  Based upon the allegations of substandard performance of
duty, misconduct, and moral or professional dereliction
documented in reference (b), I have determined that there is
sufficient information to refer this case to a Board of Inquiry
for a recommendation as to whether Lieutenant Colonel Seifert
should be involuntarily retired from the Marine Corps and, if
retirement is recommended, whether he should be retired in his
current grade or a lesser grade.

3.  Accordingly, you are directed to convene a Board of Inquiry
under the provisions of reference (a) to consider Lieutenant
Colonel Seifert's case.  The specific reasons for retirement and
grade reduction to be considered by the Board are substandard
performance of duty, misconduct, and moral or professional
dereliction as evidenced by one or more of the following:

    a.  Failure to demonstrate acceptable qualities of
leadership required of an officer in the member's grade;

    b.  Failure to properly discharge duties expected of
officers of the member's grade and experience;

Subj:  BOARD OF INQUIRY IN THE CASE OF LIEUTENANT COLONEL
       DANIEL R. SEIFERT, 339 46 9775/7543 USMC

    c.  Commission of a military or civilian offense that could
be punished by confinement of 6 months or more and any other
misconduct that would require specific intent for conviction;
and

    d.  Intentional misrepresentation or omission of material
fact in official written documents or official oral statements.

4.  Lieutenant Colonel Seifert will be notified by separate
correspondence that separation proceedings have been initiated
and of his right to 30 days delay in which to prepare his case.

5.  The written report of the Board of Inquiry should be
forwarded to this Headquarters (JAM).  A verbatim transcript of
the proceedings is required in any case where the Board finds
that the basis for separation is supported by a preponderance of
the evidence.

6.  Correspondence relating to this and all other officer
administrative separation processing cases should be mailed
using the most expeditious means available.

7.  Reference (a) provides time goals for processing officer
administrative separation cases.  Failure to comply with those
standards should be addressed in the return endorsement.

J. W. KLIMP
Deputy Commandant for
Manpower and Reserve Affairs

Copy to:
CG, MCCDC

**Plantiff's Exhibit 1**
**Page 2 of 8**

2



**DEPARTMENT OF THE NAVY**
HEADQUARTERS UNITED STATES MARINE CORPS
2 NAVY ANNEX
WASHINGTON, DC 20380–1775

IN REPLY REFER TO:

1920
JAMO
1 8 APR 2001

From:   Commandant of the Marine Corps
To:     Lieutenant Colonel Daniel R. Seifert, 339 46 9775/7543
        USMC
Via:    Commanding General, Marine Corps Base, Quantico

Subj:   NOTIFICATION OF BOARD OF INQUIRY

Ref:    (a) LtCol Seifert ltr 1920 BO52 of 29 Dec 00
        (b) SECNAVINST 1920.6B
        (c) CMC ltr 1920 JAMO of 2 8 ..... 2001

Encl:   (1) Rights of a Respondent
        (2) Acknowledgment of Notice

1.  Reference (a), your conditional retirement request, did not
comply with the requirements of reference (b) and therefore, it
was denied.

2.  Pursuant to references (b) and (c), you are notified that a
Board of Inquiry will be convened to make recommendations on
your retirement.

3.  The specific reasons for retirement and retirement grade
reduction to be considered by the Board is substandard
performance of duty, misconduct, and moral or professional
dereliction as evidenced by one of the following:

    a.  Failure to demonstrate acceptable qualities of
leadership required of an officer in the member's grade;

    b.  Failure to properly discharge duties expected of
officers of the member's grade and experience;

    c.  Commission of a military or civilian offense that could
be punished by confinement of 6 months or more and any other
misconduct that would require specific intent for conviction;
and

    d.  Intentional misrepresentation or omission of material
fact in official written documents or official oral statements.

Subj: NOTIFICATION OF BOARD OF INQUIRY

4. The Board of Inquiry will make the following determinations and recommendations, by majority vote, based on a preponderance of the evidence presented at the hearing:

    a. A finding on the reason(s) for retirement and/or grade reduction; and

    b. One of the following:

        (1) If the board finds that one or more of the reasons for your retirement are supported by sufficient evidence to warrant your retirement the board will also recommend whether you should be retired in you current grade or a lesser grade; or

        (2) If the board finds that the reasons for retirement are not supported by sufficient evidence to warrant retirement, your case will be closed.

5. The board should recommend retirement in a lesser grade if the board determines:

    a. That your misconduct was serious enough to constitute a significant departure from the conduct required of an officer of the Naval Service; and

    b. That your record, in spite of the misconduct, is not otherwise so meritorious as to demonstrate that you have served satisfactorily in your current grade.

6. In addition, an officer must meet the minimum time in grade requirements set forth in title 10, U.S. Code, to be retired in his current grade, regardless of whether that service is determined to be satisfactory.

7. Any request for voluntary retirement must be in strict compliance with paragraph 2 of Enclosure (6) of reference (a). This request must be faxed to this office at (703) 695-8350, DSN, 225-8350 for a compliance review at least 14 days prior to the Board of Inquiry hearing.

8. You have 30 days in which to prepare your case. You may petition the convening authority for a delay of the hearing if you need additional time to prepare.

**Plantiff's Exhibit 1**
**Page 4 of 8**

Subj:  NOTIFICATION OF BOARD OF INQUIRY

9.  As the respondent, you are entitled to exercise the rights set forth in enclosure (1).  Your failure to invoke any of these rights will not be considered as a bar to the Board of Inquiry proceedings.

10.  This letter is the notice required by reference (a).  You will be notified of the names of the board members and of the date and location of the hearing by the senior member of the board.

11.  You are directed to acknowledge this notification by completing enclosure (2) and returning it to this Headquarters (JAM) within 5 working days of receipt.

R. G. SOKOLOSKI
By direction

**Plantiff's Exhibit 1**
**Page 5 of 8**

3

RIGHTS OF A RESPONDENT

(a) **The Respondent shall be given the following rights, which may be exercised or waived:**

(1) 30 days to prepare his or her case with reasonable additional time, as determined necessary by the Board of Inquiry. The respondent may, for good cause, further petition the convening authority in a timely manner, for a continuance.

(2) The right to counsel, as provided in paragraph (b) below.

(3) The opportunity to present matters in his or her own behalf. If suspected of an offense, the officer should be warned against self-incrimination under Article 31, UCMJ, before testifying as a witness. Failure to warn the officer shall not preclude consideration of the testimony of the officer by the Board of Inquiry.

(4) Full access to, and copies of, records relevant to the case, except that information or material shall be withheld if the CHNAVPERS or DC (M&RA) determines that such information should be withheld in the interest of national security. When information or material is so withheld, a summary of the information or material will be provided to the extent that the interests of national security permit.

(5) The names of all witnesses in advance of Board of Inquiry proceedings. Failure to provide any information or the name of a witness shall not preclude the Board from considering the information or hearing the witness, provided the respondent has had the opportunity to examine any statement, or talk with any witness presented, prior to consideration by the Board of Inquiry.

(6) The right to challenge any member for cause. The respondent may submit to the convening authority for appropriate action, any relevant matter which, in his or her view, indicates that a particular member or members should not consider the case. A member shall be excused if found by the convening authority or the legal advisor to be unable to render a fair and impartial decision in the respondent's case. If such an excusal results in the membership of the Board falling below the number required, the convening authority shall appoint a new member who is qualified. Such new member may be challenged in the same manner as the member who was previously appointed and excused.

(7) The right to request from the convening authority or the Board of Inquiry the appearance before the Board of any witness whose testimony is considered to be pertinent to the case.

(8) The right to submit, at any time before the Board convenes or during the proceedings, any matter from the respondent's service record, letter answers, depositions, sworn or unsworn statements, affidavits, certificates, or stipulations. This includes, but is not limited to, depositions of witnesses not deemed to be reasonably available or witnesses unwilling to appear voluntarily.

(9) The respondent and counsel may question any witness who appears before the Board of Inquiry. Testimony of witnesses shall be under oath or affirmation.

(10) The right to give sworn or unsworn testimony. The respondent may only be examined on sworn testimony. The respondent should be warned against self-incrimination as required by Article 31, UCMJ. Failure to so warn the respondent shall not preclude consideration of the testimony by the Board of Inquiry.

(11) The respondent or counsel may present argument on the matter to the Board.

(12) The respondent shall be provided with a copy of the record of the proceedings in the case and a copy of the findings and recommendations of the Board. In cases involving classified matter withheld in the interests of national security, any record or information to be provided the respondent will be edited prior to delivery to him or her to remove classified material and preserve its integrity.

(13) The respondent may submit a statement in rebuttal to the findings and recommendations of the Board of Inquiry for consideration of the Secretary of the Navy.

(14) The respondent may appear in person, with or without counsel, at all open proceedings of the Board.

(15) Failure of the respondent to invoke any of these rights shall not be considered as a bar to the Board of Inquiry proceedings, findings, or recommendations.

1920
JAMO

From:    Lieutenant Colonel Daniel R. Seifert 339 46 9775/7543
         USMC
To:      Commandant of the Marine Corps (JAM)
Via:     Commanding General, Marine Corps Base, Quantico

Subj:    ACKNOWLEDGMENT OF NOTICE

Ref:     (a) CMC ltr 1920 JAMO of _____

1.  I acknowledge that I was notified by the reference that my
case will be heard by a Board of Inquiry.  I understand that I
have 30 days in which to prepare my case and that I am entitled
to exercise the rights set forth in enclosure (1) of the
reference.

                                    DANIEL R. SEIFERT


                          Date notified  23 APR 2001  0850


                                                Enclosure (2)

**Plantiff's Exhibit 1**
**Page 8 of 8**

SECNAVINST 1920.6B
13 DEC 1999

## POLICY GOVERNING INVOLUNTARY SEPARATION

1.  Separation for Cause.  Officers who do not maintain required standards of performance or professional or personal conduct may be disciplined when appropriate and/or may be processed for separation for cause in accordance with this instruction when there is reason to believe that one or more of the following circumstances exist. Nothing in this instruction is intended to preclude trial by court-martial when appropriate.

   a.  Substandard Performance of Duty.  Inability of an officer to maintain adequate levels of performance or conduct as evidenced by one or more of the following reasons:

       (1) Failure to demonstrate acceptable qualities of leadership required of an officer in the member's grade.

       (2) Failure to achieve or maintain acceptable standards of proficiency required of an officer in the member's grade.

       (3) Failure to properly discharge duties expected of officers of the member's grade and experience.

       (4) Failure to satisfactorily complete any course of training, instruction, or indoctrination which the officer has been ordered to undergo.

       (5) A record of marginal service over an extended time as reflected in fitness reports covering two or more positions and signed by at least two reporting seniors.

       (6) Personality disorders, when such disorders interfere with the officer's performance of duty and have been diagnosed by a physician or clinical psychologist in accordance with the Section on Mental Disorders, International Classification of Diseases and Injuries-9 (ICD-9), Diagnostic and Statistical Manual (DSM-IV) of Mental Disorders, and NAVMED P117 "Manual of the Medical Department."

       (7) An officer who has been referred to a program of rehabilitation for personal abuse of drugs may be separated for failure, through inability or refusal, to participate in or

**Plaitiff's Exhibit 2**
**Page 1 of 4**

Enclosure (3)

SECNAVINST 1920.6B
13 DEC 1999

successfully complete such a program.  Nothing in this provision precludes separation of an officer who has been referred to such a program under any other provision of this instruction in appropriate cases.

(8) An officer who has been referred to a program of rehabilitation for alcohol abuse may be separated for failure, through inability or refusal, to participate in or successfully complete such a program.  Nothing in this provision precludes separation of an officer who has been referred to such program under any other provision of this instruction in appropriate cases.

(9) Failure to conform to prescribed standards of dress, weight, personal appearance, or military deportment.

(10) Unsatisfactory performance of a warrant officer, not amounting to misconduct, or moral or professional dereliction.

b.  <u>Misconduct, or Moral or Professional Dereliction</u>. Performance or personal or professional conduct (including unfitness on the part of a warrant officer) which is unbecoming an officer as evidenced by one or more of the following reasons:

(1) Commission of a military or civilian offense which could be punished by confinement of 6 months or more and any other misconduct which would require specific intent for conviction.

(2) Unlawful drug involvement.  Processing for separation is mandatory.  An officer shall be separated if an approved finding of unlawful drug involvement is made.  Exception to mandatory processing or separation may be made on a case-by-case basis by the Secretary when the officer's involvement is limited to personal use of drugs and the officer is judged to have potential for future useful service as an officer and is entered into a formal program of drug rehabilitation under reference (f).

(3) Sexual perversion.

(4) Intentional misrepresentation or omission of material fact in obtaining appointment.

Plaitiff's Exhibit 2
Page 2 of 4

Enclosure (3)                          2

SECNAVINST 1920.6B
13 DEC 1999

(5) Fraudulent entry into an Armed Force or the fraudulent procurement of commission or warrant as an officer in an Armed Force.

(6) Intentional misrepresentation or omission of material fact in official written documents or official oral statements.

(7) Failure to satisfactorily complete any course of training, instruction, or indoctrination which the officer has been ordered to undergo when such failure is willful or the result of gross indifference.

(8) Marginal or unsatisfactory performance of duty over an extended period, as reflected in successive periodic or special fitness reports, when such performance is willful or the result of gross indifference.

(9) Intentional mismanagement or discreditable management of personal affairs, including financial affairs.

(10) Misconduct or dereliction resulting in loss of professional status including withdrawal, suspension, or abandonment of license, endorsement, certification, or clinical medical privileges necessary to perform military duties in the officer's competitive category or Marine Corps Occupational Field. When the loss of professional qualification results solely from the removal of the ecclesiastical endorsement, processing under paragraph 2 of this enclosure is required.

(11) A pattern of discreditable involvement with military or civilian authorities, notwithstanding the fact that such misconduct has not resulted in judicial or nonjudicial punishment under the UCMJ.

(12) Conviction by civil authorities (foreign or domestic) or action taken which is tantamount to a finding of guilty, which, if service connected, would amount to an offense under the UCMJ.

(13) One or more substantiated incidents of serious misconduct resulting from the officer's active participation in extremist or supremacist activities which, in the independent judgment of the convening authority, is more likely than not to

Plaitiff's Exhibit 2
Page 3 of 4

SECNAVINST 1920.6B
13 DEC 1999

undermine unit cohesion or be detrimental to the good order, discipline, or mission accomplishment of the command or unit. Such misconduct must relate to:   (1) illegal discrimination based on race, creed, color, sex, religion, or national origin; or (2) advocating the use of force or violence against any Federal, state, or local Government, or any unit or agency thereof, in contravention of Federal, State, or local laws.

(14) An officer who has been referred to a program of rehabilitation, education and counseling for sex offenders may be separated for failure, through inability or refusal, to participate in such a program.  Nothing in this provision precludes separation of an officer who has been referred to such a program under any other provision of this instruction in appropriate cases.  An officer shall be separated under this provision if the following approved findings are made:  A service member who has admitted to the offense(s), or whose case has been substantiated, or who has been found to have committed the offense(s) at nonjudicial punishment (NJP), or who has been found guilty at a criminal trial and thereafter refuses to cooperate with or complete rehabilitation, education, and counseling programs, or who does not cease his/her abusive behaviors.

c.   Homosexual Conduct

(1) Homosexual conduct is grounds for separation from the Naval Service.  Homosexual conduct includes homosexual acts, a statement by a service member that demonstrates a propensity or intent to engage in homosexual acts, or a homosexual marriage or attempted homosexual marriage.  A statement by a service member that demonstrates a propensity or intent to engage in homosexual acts is grounds for separation not because it reflects a member's sexual orientation, but because the statement indicates a likelihood the service member engages in or will engage in homosexual acts.  A service member's sexual orientation is considered a personal and private matter, and is not a bar to continued service unless manifested by homosexual conduct under the terms set forth in subparagraphs (a) through (c).  Commanders are to report homosexual conduct to CNPC (NPC-834) or CMC (Code JAM), as appropriate.  The Show Cause Authority (SCA) and a BOI shall recommend an officer for separation if one or more of the following approved findings is made:

Plaitiff's Exhibit 2
Page 4 of 4

Enclosure (3)                              4

SECNAVINST 1920.6B
13 DEC 1999

## GUIDELINES ON RECOMMENDATIONS -
## GRADE AT RETIREMENT

1.  <u>Satisfactory Service in the Grade Currently Held</u>.  Officers
who retire from the Naval Service may be retired in the highest
grade that they served on active duty satisfactorily, as
determined by the Secretary.  This determination will be made by
the Secretary without a BOI in those cases, forwarded per
paragraph 1c or 2 of this enclosure, where the officer has
submitted a voluntary retirement request.  In any other case
where CHNAVPERS or DC/S (M&RA) determines that retirement in
lesser grade may be appropriate, a BOI shall be tasked, in
accordance with enclosure (8), to recommend whether the officer
should be retired in the current grade or a lesser grade.  In
making this recommendation, the BOI must determine the grade in
which the officer last served satisfactorily for a period of not
less than 6 months.  The BOI determination is merely a
recommendation and the final decision as to retirement grade
rests with the Secretary.  Finally, the procedures in this
enclosure do not apply to officers retiring in the grades of O-9
and O-10.  DODINST 1320.4 of ·14 March 1995 (NOTAL) provides
procedures applicable to officers retiring in grades O-9 and O-
10.

    a.  <u>General Guidance</u>.  A recommendation that an officer has
or has not served satisfactorily in the grade currently held
should be based on a determination made after considering all
relevant factors, such as the nature of the misconduct and its
effect on professional performance.  If a BOI is held, the record
must support such a determination.  In the case of a retirement-
eligible officer, the BOI or officials reviewing the retirement
request should recommend retirement in a lesser paygrade if the
BOI or reviewing officials determine that the officer's misconduct
was serious enough to constitute a significant departure from the
conduct required of an officer of the Naval Service.  Examples of
such misconduct include, but are not limited to:  abuse of special
position of trust; an act or acts which bring discredit upon the
armed services; disregard by a superior of customary superior-
subordinate relationships; acts or omissions that adversely affect
the ability of the military unit or the organization to maintain
discipline, good order, and moral or endanger the security of the
United States or the health and welfare of other members of the
Armed Forces; and deliberate acts or omissions that seriously
endanger the capability, security, or safety of the military unit
or health and safety of other persons.  However, when the
officer's record, in spite of the misconduct, is otherwise so

**Plaitiff's Exhibit 3**
**Page 1 of 4**

Enclosure (6)

SECNAVINST 1920.6B
**13 DEC 1999**

meritorious as to demonstrate that the officer served
satisfactorily in the grade currently held, the recommendation
should be for retirement in that grade.

b. <u>Specific Factors</u>. In considering whether an officer
served satisfactorily in the grade currently held, the following
factors should normally be considered:

(1) Nature and severity of the misconduct;

(2) The misconduct and its relation to, and effect on the
performance of military duties.

(3) All fitness reports and other portions of the service
record which reflect performance in the current grade. In this
regard it is appropriate to consider whether the misconduct was
known by reporting seniors, and if not, what effect, if any, it
might have had on the officer's record.

(4) Time in current grade, and relation between such time
and the time of misconduct.

(5) Other relevant matters presented either by the record
or the officer.

(6) Chain of command recommendations.

c. <u>Forwarding Procedures</u>. All voluntary retirement requests
from officers who have been the subject of any substantiated
adverse finding or conclusion from an officially documented
investigation or inquiry (except minor traffic infractions) shall
be forwarded to the Secretary for a retirement grade determination
if: for officers in paygrades O-7 and O-8, the investigation or
inquiry was completed subsequent to the officer's most recent
Senate confirmation; or, for officers in paygrades O-5 and O-6,
the investigation or inquiry was completed within 2 years of the
date the voluntary retirement request is submitted. However,
CHNAVPERS or DC/S (M&RA) may, in their discretion, forward a case
completed prior to the 2 years before the date of the voluntary
retirement request if circumstances warrant.

**Plaitiff's Exhibit 3**
**Page 2 of 4**

Enclosure (6)                                    2

SECNAVINST 1920.6B
13 DEC 1999

(1) Prior to forwarding a voluntary retirement request to the Secretary, CHNAVPERS or DC/S (M&RA) shall notify the officer in writing of the following:

(a) That the officer's voluntary retirement request is being forwarded to the Secretary for a retirement grade determination.

(b) The factual basis supporting the substantiated adverse finding or conclusion from the officially documented investigation or inquiry.

(c) The recommended retirement grade.

(d) That the officer may submit a rebuttal or decline to make a statement.

(e) That the officer has the right to confer with appointed counsel as provided in paragraph 3 of enclosure (7).

(f) That the officer will, upon request, be provided copies of the papers to be forwarded to the Secretary. Classified documents may be summarized.

(g) That the officer has the right to waive subparagraphs (d), (e), and (f), and that failure to respond shall constitute waiver of the rights in these paragraphs.

(h) That the officer has a specified period of time to respond to the notification as provided in paragraph 4 of enclosure (7).

(2) The officer's response shall be forwarded to CHNAVPERS or DC/S (M&RA) with appropriate command recommendations. CHNAVPERS or DC/S (M&RA) shall ensure that the request and all related material has been reviewed by at least two general or flag officers and that each such general or flag officer has made an independent recommendation regarding retirement grate. CHNAVPERS or DC/S (M&RA) shall then forward the case file to the Secretary, via the Chief of Naval Operations or Commandant of the Marine Corps, with a retirement grade recommendation.

d. The final determination of retirement grade rests exclusively with the Secretary. Commanders are not authorized to enter into agreements in which an officer is to be retired at a particular grade level.

**Plaitiff's Exhibit 3**
**Page 3 of 4**

3                                    Enclosure (6)

SECNAVINST 1920.6B
13 DEC 1999

## 2.   Retirement-Eligible Officer

a.   Any officer being considered for administrative show cause proceedings in accordance with this instruction who is eligible for voluntary retirement under any provision of law may submit a request for voluntary retirement.  The request shall be submitted via CHNAVPERS or DC/S (M&RA) and shall include the following information:

(1) A statement that the officer understands that a BOI will not be convened to make a recommendation to the Secretary on retirement grade.

(2) A statement that the officer understands that the Secretary may retire him or her in a lesser paygrade than currently held; and that the retirement grade will be the highest grade in which the officer served satisfactorily, as determined by the Secretary.

(3) A statement that the officer has consulted with counsel, including counsel's name, grade, and branch of service. If civilian counsel is retained, provide name and address.

(4) A statement that the officer admits that his or her performance of duty was substandard, and if the officer is being required to show cause for misconduct, that he or she admits committing the misconduct.

(5) A statement that the request is voluntary and may be withdrawn only with the permission of the Secretary.

(6) A statement by the officer that he or she does or does not desire to provide supplemental material to the Secretary for consideration.  Any supplemental material provided by the officer will be attached to the request.

b.   The request shall also include a copy of the investigation or other documentation pertaining to the misconduct.

c.   The request shall be forwarded with appropriate command endorsements.  Each endorsement shall include a recommendation to approve or disapprove the request and a statement indicating the highest grade in which the officer served satisfactorily.   Any relevant information or investigative material not included in the original request should also be included.  Any new factual material shall be provided to the officer for review and comment.

**Plaitiff's Exhibit 3**
**Page 4 of 4**

Enclosure (6)                              4

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DANIEL R. SEIFERT                          )
                                                           )
                             Plaintiff,          )
                                                           )
v.                                                        )                    C.A. No. 06-2219 (RBW)
                                                           )
DONALD C. WINTER                         )
                                                           )
                             Defendant.       )

**<u>ORDER</u>**

Upon consideration of Defendant's Motion for Summary Judgment, plaintiff's opposition,

and defendant's reply thereto; and upon consideration of the Plaintiff's Cross Motion for

Summary Judgment, defendant's opposition, and plaintiff's reply thereto; and the Court having

considered the entire record herein, it is this _____ day of

_____, 2007,

ORDERED, that the Defendant's Motion for Summary Judgment is DENIED.  It is

further

ORDERED, that Plaintiff's Cross Motion for Summary Judgment is GRANTED.  It is

further

ORDERED, that Defendant shall correct Plaintiff's military records by

a)  removing from plaintiff's official military personnel file all records relating to (1)

plaintiff's unlawful NJP and (2) all documents referring to plaintiff's unlawful retirement

and retirement grade determination;

b) correcting plaintiff's records to reflect that he was voluntarily retired effective

September 1, 2002, as a lieutenant colonel; and

c) any other appropriate relief deemed necessary by this Court.


_____

UNITED STATES DISTRICT JUDGE