# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                          )
DANIEL SEIFERT,                           )
                                          )
                    Plaintiff             )
                                          )
        v.                                )        Civil Action No. 06-2219 (RBW)
                                          )
DONALD C. WINTER,                         )
Secretary of Navy,                        )
                                          )
                    Defendant.            )
                                          )
_____ )


## MEMORANDUM OPINION

Daniel Seifert, the plaintiff in this civil lawsuit, "seeks review of the decisions of the

Board of Correction of Naval Records ([the 'BCNR']) dated June 21, 2004, and November 20,

2006," pursuant to the Administrative Procedures Act, 5 U.S.C. §§ 551-59, 701-06, 1305, 3105,

3344, 4301, 5335, 5372, 7521 (2000) (the "APA").  Complaint (the "Compl.") ¶ 1.  Both the

plaintiff and Donald C. Winter, the Secretary of the Navy (the defendant in this civil lawsuit in

his official capacity), seek summary judgment pursuant to Federal Rule of Civil Procedure 56.

Defendant Department of Navy's Motion for Summary Judgment at 1; Plaintiff's Cross-Motion

for Summary Judgment and Combined Memorandum of Points and Authorities in Opposition to

Defendant's Motion for Summary Judgment and in Support of Plaintiff's Cross[-]Motion for

Summary Judgment (the "Pl.'s Opp'n/Cross-Mot.") at 1.  After carefully considering the

plaintiff's complaint, the administrative record, the parties' motions, and all memoranda of law

and exhibits thereto,[1] the Court finds that the BCNR erred in issuing its decisions, and that this error requires that the case be remanded to the BCNR for further proceedings in accordance with this memorandum opinion. The Court will therefore deny the defendant's motion for summary judgment and will grant in part and deny in part the plaintiff's cross-motion for summary judgment for the reasons that follow.

## I. Background

The following facts are either admitted, undisputed, or part of the administrative record on review.[2] On October 27, 1999, the plaintiff, an officer in the United States Marine Corps, Compl. ¶ 5, then living at the naval air station at Patuxent River, Maryland, Def.'s Facts ¶ 2, "arrived home" to discover "an unfinished plate of food remain[ing] on the table," Complaint ¶ 7. When the plaintiff's wife "indicated that she had instructed her 10-year old son, [the] plaintiff's stepson, to finish eating over 30 minutes previously," the plaintiff, after "finish[ing] his dinner, . . . forced some beans into his stepson's mouth with one of his hands" in what the plaintiff describes as "an attempt to discipline the stepson." Id. ¶ 8. The incident caused a quarrel between the plaintiff and his wife, id. ¶ 9, which, in turn, led to the filing of military

---

[1] In addition to the plaintiff's complaint, the administrative record, the defendant's motion for summary judgment, and the plaintiff's cross-motion for summary judgment, the Court considered the following documents in reaching its decision: (1) the Defendant's Memorandum in Support of Motion for Summary Judgment (the "Def.'s Mem."), (2) the Defendant's Statement of Material Facts As to Which There Is No Genuine Dispute (the "Def.'s Facts"), (3) the Plaintiff's Statement of Material Facts to Which There Exists a Genuine Issue, (4) the Plaintiff's Statement of Material Facts to Which There Exists No Genuine Issue, (5) the Defendant's Reply in Support of Defendant's Motion for Summary Judgment and Opposition to Plaintiff's Cross-Motion for Summary Judgment (the "Def.'s Reply/Cross-Opp'n"), (6) the Defendant's Response to Plaintiff's Statement of Material Facts, and (7) the Plaintiff's Reply to Defendant's Opposition to Plaintiff's Cross-Motion for Summary Judgment (the "Pl.'s Cross-Reply").

[2] Because the defendant did not file an answer to the plaintiff's complaint, the Court will treat all of the facts alleged in the complaint as true pursuant to Federal Rule of Civil Procedure 8(b)(6). All citations to the defendant's statements of undisputed facts refer to statements that are not disputed by the plaintiff.

charges against the plaintiff.  Id. ¶ 10.  Ultimately, the plaintiff was referred to a general court-martial pursuant to 10 U.S.C. § 833 (2000), based on "this family incident" as well as "other alleged incidents involving [the plaintiff's] family," id. ¶ 10, including the plaintiff's violation of "a military protective order to have no contact with his spouse," Def.'s Facts ¶ 3.

"Even though [the] plaintiff was convinced that the evidence would exonerate him of most offenses at a general court-martial," the plaintiff agreed to plead guilty to all of the offenses through an administrative process known as non-judicial punishment ("NJP") "to avoid a possible federal conviction by general court-martial on any of the offenses."  Compl. ¶ 11.  The Commanding General for the Marine Corps Base at Quantico, Virginia presided over the NJP process, id. ¶¶ 12-13, even though the "[p]laintiff was not a member of the command of the [Commanding General]," id. ¶ 13.  The Commanding General "imposed [NJP] upon [the] plaintiff for disobeying a lawful order, false official statement, and assault upon a child in violation of the Uniform Code of Military Justice."  Def.'s Facts ¶ 4.

"[R]elying largely upon the findings of guilt contained in the Report of NJP, the Commandant of the Marine Corps denied a previously submitted request from [the] plaintiff to voluntarily retire, and directed the plaintiff to show cause for retention in the U.S. Marine Corps."  Compl. ¶ 14.  Thereafter, a Board of Inquiry (the "BOI") "composed of three officers of the rank of colonel was convened to determine whether [the] plaintiff should be involuntarily retired, and[,] if involuntary retirement was recommended, whether he should be retired in his current grade of lieutenant colonel or the lesser grade of major."  Id.  The BOI considered not only the allegations made in connection with the plaintiff's NJP, but also "one offense occurring in 1981, one alleged offense occurring sometime between 1983 and 1992, and two other offenses

3

previously resolved in 1996." Id. After "substantiat[ing] six of fifteen total offenses brought

against [the] plaintiff at the BOI," including "four of the eleven NJP offenses," the BOI

"recommended that [the] plaintiff be involuntarily retired [at] the grade of lieutenant colonel."

Id.

The Commanding General for the Marine Corps Combat Development Command

forwarded the BOI's recommendation to the Commandant of the Marine Corps on September 24,

2001. Id. ¶ 17. The Deputy Commandant for Manpower and Reserve Affairs reviewed the

BOI's recommendations, agreed with them, and forwarded his own recommendation "that [the]

plaintiff be involuntarily retired from the Marine Corps . . . at the grade of lieutenant colonel" to

the Assistant Secretary of the Navy for Manpower and Reserve Affairs (the "Assistant

Secretary") on November 13, 2001. Id. ¶ 18. The Assistant Secretary "decided to involuntarily

retire [the] plaintiff," but "disapproved the recommendation to retire [the] plaintiff as a lieutenant

colonel, and instead[] directed that [the] plaintiff be retired [at] the grade of major." Id. ¶ 20.

"By application dated July 17, 2002, [the] plaintiff requested the BCNR to correct his

military records . . . by disapproving [his] retirement and keeping him on active duty[,] thereby

preserving the option to process [the] plaintiff again for involuntary retirement." Id. ¶ 22. While

this appeal was still pending, the "plaintiff was involuntarily retired from the Marine Corps [at]

the grade of major effective September 1, 2002, with an honorable characterization of service."

Id. ¶ 23. Consequently, the "plaintiff amended his request to the BCNR to remove the

now[-]completed" separation process and grade demotion, which would "permit[] him to return

to active duty as a lieutenant colonel." Id.

In support of his application to correct his military records, the plaintiff argued that (1)

the Assistant Secretary's decision to involuntarily retire him at the lesser rank of major was

arbitrary and capricious because the Assistant Secretary did not discuss all of the factors listed in

the naval regulation governing separation determinations in his written decision approving the

plaintiff's separation at the grade of major, Administrative Record (the "A.R.") at 188; see also

id. at 93 (reflecting the Assistant Secretary's decision that the plaintiff should be retired at the

rank of major "due to the seriousness of the misconduct involved"); id. at 182 (incorporating the

plaintiff's arguments in support of his appeal to the Secretary of the Navy in his application to

the BCNR), (2) both the BOI and the Assistant Secretary relied upon an administrative record

that violated naval regulations, id. at 188-90, (3) the Assistant Secretary failed to consider

evidence submitted by the plaintiff in derogation of the plaintiff's due process rights, id. at 190,

and (4) one basis for the plaintiff's discharge was an event that had already been determined to

not justify the plaintiff's separation, id.  The plaintiff further argued that the BCNR should not

solicit an advisory opinion from the Judge Advocate Division of the Military Branch ("Code

JAM")[3] because "[i]t [was] decisions made by [that] office during the administrative processing

of [the plaintiff's] involuntary retirement that . . . violate[d] departmental regulations" and "it

would be a conflict of interest for [that] office to provide an advisory opinion regarding its own

actions."  Id. at 183.

In an advisory opinion dated August 30, 2002, Code JAM recommended that the BCNR

deny the plaintiff's application.  Id. at 15.  Code JAM evaluated each of the plaintiff's arguments,

and concluded that (1) the Assistant Secretary's decision to involuntarily retire the plaintiff at the

---

[3]  The acronym comes from the administrative record, where it was used by the Judge Advocate Division
itself.  See, e.g., A.R. at 11 ("[The plaintiff] suggests that Code JAM not provide an advisory opinion to [the] BCNR
regarding his BCNR application.").

rank of major was not arbitrary and capricious, id. at 11-12, (2) evidence of conduct occurring more than five years prior to the formation of the BOI was properly considered by the BOI, id. at 12-14, (3) the plaintiff's due process rights were protected by the issuance of a certificate of service of the BOI's recommendation informing the plaintiff that he had ten days from the date of the recommendation to "submit matters for consideration," and "every effort was made to facilitate [the plaintiff's untimely] submission" to the Assistant Secretary, id. at 14, and (4) that the concept of double jeopardy did not apply in the administrative context, id. at 14-15. Code JAM also took issue with the plaintiff's argument that it should refrain from issuing an advisory opinion due to a conflict of interest, reasoning that "Code JAM [was] the appropriate office to render the requested advisory opinion," and that "allowing a BCNR petitioner to select or direct the office to review [his or her] petition [would] encourage[] 'forum shopping,'" id. at 11. The BCNR advised the plaintiff that it was adopting Code JAM's findings in a "correspondence" dated June 21, 2004. Compl. ¶ 24.

"On June 19, 2005, [the] plaintiff filed a new application with new evidence to correct his military records." Id. ¶ 25. In support of this new application, the plaintiff argued that he had "new evidence that the Commanding General . . . who [presided over the NJP process] against [the plaintiff] did not have jurisdiction or authority to [impose] NJP against [the plaintiff]," and that as a consequence the "consideration of this unlawful NJP" by the BOI and the Assistant Secretary "made his involuntary retirement and reduction unlawful," A.R. at 4. Once again, Code JAM issued an advisory opinion, this time concluding that the plaintiff's application was untimely, id. at 18, and that "[t]he suggestion now that an officer exercising general court-martial convening authority over the [plaintiff] did not have the authority to dispose of the charges at

[an] NJP [proceeding], particularly when the disposition was specifically requested by the [plaintiff], with the advice of competent counsel, [was] without merit and disingenuous," id. at 19. The plaintiff challenged these conclusions in a letter dated October 27, 2005. Id. at 20-22.

The BCNR denied the plaintiff's new application on November 20, 2006. Compl. ¶ 26. It "found that the evidence submitted was insufficient to establish the existence of probable material error or injustice," and "substantially concurred with the comments contained in [Code JAM's] advisory opinion." A.R. at 118. It further found that "even though some of the offenses [for which the plaintiff] received [NJP] may have occurred outside the two year statutory limitation[], this [was] not a basis to remove the entire NJP." Id. at 118-19. Finally, the BCNR concluded "that all of [the plaintiff's] instances of misconduct which were found to have occurred by [the BOI] occurred or were identified during the five[-]year regulatory limitation period." Id. at 119.

The plaintiff filed his complaint in this Court on December 27, 2006. In his complaint, the plaintiff claims that the BCNR's decisions "violated [the] plaintiff's right, pursuant to 10 U.S.C. § 1552 [(2000)], to have his military records corrected to adequately and fully correct an error or remove an injustice." Id. ¶ 28. Specifically, he claims that "by failing to remove the unlawful NJP and the unlawful involuntary retirement and retirement grade determinations, the . . . BCNR withheld and unreasonably delayed relief to which the plaintiff was legally entitled." Id. As alleged by the plaintiff, "[t]hese BCNR decisions were arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[,] and were unsupported by substantial evidence," and therefore are "within the authority of a reviewing court to remedy under the APA." Id.

7

The plaintiff challenges the validity of the BCNR's decisions on three grounds. First, he argues that the BCNR erred because it did not recognize any error in the BOI's consideration of the plaintiff's NJP, which, according to the plaintiff, is void for lack of jurisdiction. Pl.'s Opp'n/Cross-Mot. at 10-14; Pl.'s Cross-Reply at 3-5. Second, he asserts that the BCNR erred in concluding that the BOI could rely upon actions taken by the plaintiff more than five years prior to the BOI proceedings in determining that the plaintiff should be separated from the Marine Corps notwithstanding a naval regulation prohibiting reliance on such acts as the basis for separation. Id. at 14-17; Pl.'s Cross-Reply at 5-6. Finally, the plaintiff contends that the BCNR erred in determining that the Assistant Secretary complied with applicable naval regulations when he decided to involuntarily retire the plaintiff at the lower grade of major instead of the recommended grade of lieutenant commander. Id. at 17-20; Pl.'s Cross-Reply at 6-8.

In his defense of the BCNR's rulings, the defendant counters that the BOI could rely on the plaintiff's NJP in crafting its recommendations and that any error in considering the NJP was harmless in any event. Def.'s Mem. at 9-10; Def.'s Reply/Cross-Opp'n at 3-4. He further argues that the BOI's consideration of matters more than five years old did not violate naval regulations because those matters did not form the sole basis for the BOI's recommendation of separation. Def.'s Reply/Cross-Opp'n at 4. Finally, the defendant asserts that the Assistant Secretary's decision to involuntarily retire the plaintiff at the rank of major was supported by the plaintiff's record and that the Assistant Secretary was not required to discuss all of the factors listed in the applicable naval regulation for consideration in rendering a determination of that sort in the written decision itself. Def.'s Mem. at 10-11; Def.'s Reply/Cross-Opp'n at 5.

8

## II. Standard of Review

Both parties seek summary judgment pursuant to Federal Rule of Civil Procedure 56. Under that rule, summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. When ruling on a Rule 56 motion, the Court must view the evidence in the light most favorable to the non-moving party. Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)). The Court must also draw "all justifiable inferences" in the non-moving party's favor and accept the non-moving party's evidence as true. Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986). The non-moving party, however, cannot rely on "mere allegations or denials," Burke v. Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248) (internal quotation and citation omitted), for "conclusory allegations unsupported by factual data will not create a triable issue of fact." Pub. Citizen Health Research Group v. FDA, 185 F.3d 898, 908 (D.C. Cir. 1999) (internal quotation and citation omitted). If the Court concludes that "the non-moving party has failed to make a sufficient showing on an essential element of h[is] case with respect to which []he has the burden of proof," then the moving party is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

## III. Legal Analysis

As the Court previously noted, the plaintiff seeks relief from the BCNR's determinations pursuant to the APA. Under this statute, the Court must uphold the BCNR's decisions unless they were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

5 U.S.C. § 706(2)(A). Thus, in order to reverse an agency's determination under the APA, a reviewing court must be unable "to conclude that the [agency whose action is under review] examined the relevant data and articulated a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made." Kreis v. Sec'y of Air Force, 406 F.3d 684, 686 (D.C. Cir. 2005) (internal quotation and citation omitted). The "agency's explanation need not be a model of analytic precision to survive a challenge" under the APA; rather, "[a] reviewing court will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Frizelle v. Slater, 111 F.3d 172, 176 (D.C. Cir. 1997) (internal quotation and citation omitted).

As a general matter, courts in this Circuit employ "an unusually deferential application of the 'arbitrary and capricious' standard of the [APA]" where the agency at issue is a part of the military. Cone v. Caldera, 223 F.3d 789, 793 (D.C. Cir. 2000). "This deferential standard is calculated to ensure that courts do not become a forum for appeals by every soldier dissatisfied with [an agency's action], a result that would destabilize military command and take the judiciary far afield of its area of competence." Id. However, this exaggerated degree of deference is unnecessary if "the issue before the court does not involve a military judgment requiring military expertise." Kreis, 406 F.3d at 686.

The plaintiff contends that the BOI violated binding naval regulations by considering his NJP and basing its recommendation of separation in part on conduct occurring more than five years prior to the BOI's formation. See supra part I. He also argues that the Assistant Secretary violated the naval regulation setting forth certain factors to be considered in making a separation determination by involuntarily retiring the plaintiff at the rank of major without addressing those

factors in his written decision.  Id.  Although the Court finds the plaintiff's arguments regarding

the BOI's supposed consideration of his NJP to be without merit, it agrees with the plaintiff that

the BOI violated naval regulations by relying on conduct by the defendant more than five years

old at the time of the BOI's hearing as the basis for his separation from the Marine Corps.  The

Court will not, however, remand this case to the BCNR with instructions to remove the

plaintiff's separation and retirement at the rank of major from his record and restore him to active

duty at the rank of lieutenant colonel as the plaintiff requests because that would deprive the

BCNR of its statutory right to assess whether it is necessary to take such action in light of the

procedural error identified by the Court.[4]

A.    Consideration of the NJP

The plaintiff argues at length that "the NJP imposed upon [him] was jurisdictionally

defective," Pl.'s Opp'n/Cross-Mot. at 11, because the plaintiff was not a member of the

command of the Commanding General who imposed NJP on him, see Pl.'s Opp'n/Cross-Mot. at

10-11 (arguing that "NJP was imposed upon [the] plaintiff by the [Commanding General for the

Marine Corps Base at Quantico]," and that "[i]t is undisputed that [the] plaintiff was not a

member of this command"); Pl.'s Cross-Reply at 3 (same), and thus was not authorized by statute

or naval regulations, see 10 U.S.C. § 815(b)(1) (2000) (permitting "commanding officer[s]" to

impose certain types of punishment without court-martial "upon officers of his command"

(emphasis added)); Manual for Courts-Martial § V.2.a (2000 ed.),

---

[4]  Because the Court concludes that this case must be remanded to the BCNR for a determination as to
whether the plaintiff's separation from the Marine Corps should be removed from the record due to the BOI's
impermissible reliance on conduct by the plaintiff that was more than five years old at the time of the BOI's
formation, it does not address the plaintiff's subsidiary argument that his separation should be at the rank of
lieutenant colonel.

http://www.jag.navy.mil/documents/mcm2000.pdf (restricting a commander's authority to impose NJP to "any military personnel of that command" (emphasis added)).[5]  The plaintiff further argues that "[b]ecause the jurisdictionally defective NJP was considered in the decisions to involuntarily retire the plaintiff and reduce his rank, those decisions were unlawful and failed to follow procedure required by law," Pl.'s Cross-Reply at 13.  The defendant derides these arguments as "highly disingenuous" in light of the fact that the plaintiff "specifically requested NJP by the [Commanding General for the Marine Corps Base at Quantico], pleaded guilty, and chose not to appeal the NJP."  Def.'s Reply/Cross-Opp'n at 4.

The plaintiff's entire argument rests on the misguided premise that a judgment (administrative or otherwise) procured in the absence of proper jurisdiction is void and therefore subject to collateral attack after the fact.  See Pl.'s Cross-Reply at 3-4 ("the NJP was jurisdictionally defective and was improperly considered in his involuntary retirement and reduction in rank").  While it may be the case that "questions of jurisdiction" in the military law context "are not subject to waiver," United States v. Alexander, 61 M.J. 266, 269 (C.A.A.F. 2005), it is equally true that "principles of res judicata apply to jurisdictional determinations,"

_____

[5]  A copy of § V.2.a of the Manual for Courts-Martial is included in the administrative record, see A.R. at 100-101 (photocopy of § V of the Manual for Courts-Martial), but it is not clear from the administrative record whether that copy is from the 2000 edition of the manual, which would have been the version of the manual in effect when the Board of Inquiry convened in 2001.  The Court therefore cites to the electronic copy of the manual available to the public at the website for the Judge Advocate General for the Navy.  See Sw. Ctr. for Biological Diversity v. United States Forest Serv., 100 F.3d 1443, 1450 (9th Cir. 1996) (permitting trial court to take judicial notice of documents not in administrative record in lawsuit under the Administrative Procedures Act where it is "necessary to determine whether the agency has considered all relevant factors and has explained its decision" (internal quotation and citation omitted); see also Coleman v. Dretke, 409 F.3d 665, 667 (5th Cir. 2005) ("fail[ing] to see any merit to an objection" to appellate court taking judicial notice of the contents of a state agency's website); Dulaney v. United States, 472 F. Supp. 2d 1085, 1086 (S.D. Ill. 2006) (taking judicial notice of the contents of the website for the United States Department of Veterans Affairs, and citing other cases in which courts have done the same); United States ex rel. Dingle v. BioPort Corp., 270 F. Supp. 2d 968, 972 (W.D. Mich. 2003) (collecting cases for the proposition that government documents are generally subject to judicial notice, "includ[ing] public records and government documents available from reliable sources on the Internet").

Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 n.9 (1982).
As a consequence, "[i]n most circumstances a judgment may not be collaterally attacked on the
ground that the original tribunal lacked subject matter jurisdiction, even if the issue of subject
matter jurisdiction has not been litigated in the first action."  Christopher Vill., L.P. v. United
States, 360 F.3d 1319, 1329-30 (Fed. Cir. 2004); see also Kontrick v. Ryan, 540 U.S. 443, 455
n.9 (2004) ("[e]ven subject-matter jurisdiction . . . may not be attacked collaterally"); Delta
Foods Ltd. v. Republic of Ghana, 265 F.3d 1068, 1071 (D.C. Cir. 2001) ("There is a limit . . . to
the timeliness of even a jurisdictional objection, and that limit [is] reached when the time to
appeal [runs] out."); accord United States v. Bigford, 365 F.3d 859, 865 (10th Cir. 2004) ("as
long as a party had an opportunity to litigate the jurisdictional issue, it is not subject to collateral
attack on that basis"); City of Pasadena v. Mineta, 284 F.3d 1154, 1156 (9th Cir. 2002) ("It is
elementary that any jurisdictional defect must be raised while the case is pending.").

          Moreover, "[a] party may be collaterally estopped by administrative as well as judicial
determinations."  United States v. TDC Mgmt. Corp., 24 F.3d 292, 295 (D.C. Cir. 1996); see also
United States v. Utah Constr. & Mining Co., 384 U.S. 394, 422 (1966) ("When an administrative
agency is acting in a judicial capacity and resolves disputed issues of fact properly before it
which the parties have had an adequate opportunity to litigate, the courts have not hesitated to
apply res judicata to enforce repose.").  This principle adheres even where the second proceeding
is also administrative in nature, see Nat'l Classification Comm. v. United States, 779 F.2d 687,
693 (D.C. Cir. 1985) (holding that an agency's requirement to hold a hearing is satisfied "[w]hen
a party has had an opportunity to address essentially the same substantive issues, and to present
identical arguments in a prior related proceeding"), and even where the first proceeding is

13

resolved through the entry of a guilty plea, see United States v. Satterfield, 743 F.2d 827, 838

(11th Cir. 1984) ("The facts underlying a criminal offense . . . will be given collateral estoppel

effect only if they were fully and fairly litigated at the criminal trial[] or stipulated through a

guilty plea."); United States v. Podell, 572 F.2d 31, 35 (2d Cir. 1978) ("[A] criminal conviction,

whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States . . . as to

those matters determined by the judgment in the criminal case."); In re Alsco-Harvard Fraud

Litig., 523 F. Supp. 790, 802 (D.D.C. 1981) ("well-established principles of federal law hold that

guilty pleas collaterally estop the future civil adjudication of issues necessarily admitted to by the

plea").[6]  Thus, the BCNR did not err in rejecting the plaintiff's jurisdictional challenge to his

NJP; indeed, it would have been well within its rights to have deemed the plaintiff's guilty pleas

preclusive with respect to those acts to which the plaintiff pleaded guilty.  See, e.g., Dir., Office

of Workers' Comp. Programs, United States Dep't of Labor v. Saulsberry, 887 F.2d 667, 667-68

(6th Cir. 1989) (affirming administrative review board's determination that independent

demonstration of entitlement of decedent's daughter to disability benefits was unnecessary where

eligibility determination had already been made with respect to decedent's wife).

　　　In any event, it is plain from the record that the BOI did not in fact rely upon the

plaintiff's guilty pleas in his NJP proceeding when it made its recommendations.  To the

contrary, the BOI, in the plaintiff's own words, gave him "the only opportunity that the plaintiff

had to present evidence in defense of the NJP offenses."  Compl. ¶ 14.  And as the plaintiff

---

[6] A defendant in a criminal case could theoretically challenge the jurisdictional basis for his conviction through a petition for a writ of habeas corpus because "standard res judicata principles do not bar the habeas applicant" from raising arguments previously waived by the defendant, LoBue v. Christopher, 82 F.3d 1081, 1084 (D.C. Cir. 1996); however, "NJP is deemed an administrative rather than a criminal proceeding" for most purposes, Piersall v. Winter, 507 F. Supp. 2d 23, 29 (D.D.C. 2007).

readily admits, the BOI "substantiated . . . only four of the eleven NJP offenses" based on the evidence before it.  Id.; see also A.R. at 80-81 (reflecting the BOI's findings that the plaintiff did not, inter alia, make a false statement with intent to deceive in violation of Article 107 of the Uniform Code of Military Justice, and did not strike various members of his family on six different occasions in 1998 and 1999 in violation of Article 128 of the Uniform Code of Military Justice); id. at 45 (reflecting the plaintiff's plea of guilty with respect to those same charges of false statement and assault and battery).  In other words, the BOI made its factual findings and recommended the plaintiff's separation from the Marine Corps based on the evidence before it, not the plaintiff's earlier NJP.

The plaintiff's jurisdictional argument is therefore doubly irrelevant.  It is irrelevant as a legal matter because the plaintiff's right to challenge the Commanding General's authority to issue NJP ended when he did not timely appeal the Commanding General's decision, and it is irrelevant as a factual matter because the BOI did not rely upon the plaintiff's NJP in making its factual findings and crafting its recommendations.  The BCNR did not err in rejecting the plaintiff's jurisdictional argument, and the Court must reject the plaintiff's appeal of the BCNR's determinations insofar as that appeal rests on the same argument.

B.    Consideration of Conduct More Than Five Years Old

The plaintiff's second argument, "that the BOI unlawfully considered performance and conduct that had taken place more than five years before the initiation of the BOI," stands on firmer ground.  Pl.'s Opp'n/Cross-Mot. at 14.  Pursuant to SECNAVINST 1920.6B ¶ 10.e, "[p]erformance or conduct identified more than 5 years prior to the initiation of processing for separation under paragraph 2 of this enclosure shall not form the basis for processing under this

enclosure." A.R. at 115 (emphasis added). Thus, to the extent that the BOI relied on conduct that occurred (or was identified) more than five years prior to its formation as the basis for its recommendation of separation, the BOI's recommendation violates SECNAVINST 1920.6B.

In its November 20, 2006 letter to the plaintiff denying his second application for correction of his record, the BCNR "found that all of [the plaintiff's] instances of misconduct which were found to have occurred by [the BOI] occurred or were identified during the five[-]year regulatory limitation period." Id. at 119. This conclusion is plainly in error. The BOI specifically stated that it found the plaintiff to have, inter alia, committed assault and battery against an officer executing law enforcement duties in 1996 and against a civilian woman in 1981 in violation of Article 128 of the Uniform Code of Military Justice, and to have engaged in disorderly conduct in violation of Article 133 of the Uniform Code of Military Justice in 1996. Id. at 78, 81. All of these events occurred more than five years prior to the BOI's formation on June 27, 2001.[7]

In defense of the BCNR's conclusion, the defendant adopts the position taken by Code JAM in response to the plaintiff's first application for correction of his records (and subsequently adopted by the BCNR, see infra n.7) that SECNAVINST 1920.6B "allow[s] the BOI to consider such matters if they do not form the sole basis for separation." Def.'s Mem. at 11; see also A.R. at 13 (reflecting Code JAM's opinion that the BOI could consider conduct more than five years old so long as that conduct did not form the "sole basis" for the BOI's recommendation of

---

[7] The plaintiff's conduct in 1996 resulted in the imposition of NJP on May 24, 2006. A.R. at 27. Thus, the conduct must have occurred more than five years prior to the BOI's formation on June 27, 2001.

separation).[8]  As the plaintiff correctly points out, however, "in this case[] the time-barred conduct was explicitly relied upon in considering [the] plaintiff's separation, the very purpose that is explicitly prohibited."  Pl.'s Opp'n/Cross-Mot. at 15.  This conclusion is inescapable in light of the BOI's findings worksheet, wherein the BOI states that it "recommend[ed] that [the plaintiff] be retired for the reasons listed above," A.R. at 79–a list which includes the plaintiff's unlawful conduct in 1996 and 1981, id. at 78.

The BOI's citation to additional misconduct by the plaintiff within the five years preceding the BOI's formation does not make its reliance on the plaintiff's outdated conduct any less violative of SECNAVINST 1920.6B.  The regulation plainly states that conduct that occurred or was identified more than five years prior to the initiation of separation proceedings cannot serve as the "basis" for those proceedings.  The word "basis" means "the bottom of something considered as its foundation" or "the principal component of something."  Merriam-Webster OnLine Dictionary, http://www.merriam-webster.com/dictionary/basis.  Contrary to the construction of the regulation adopted from Code JAM's advisory opinion by the BCNR below and advanced by the defendant here, this definition connotes predominance, not exclusivity–a distinction made obvious by the need to insert the adjective "sole" in front of the word "basis" to make any sense at all of the defendant's proffered interpretation of the regulation.

---

[8]  The defendant also asserts that "[t]he BCNR found that the BOI ultimately disregarded the material relating to old misconduct, basing its decision solely on the current misconduct by the [p]laintiff."  Def.'s Reply/Cross-Opp'n at 4.  This appears to be a reference to Code JAM's opinion that the BOI properly refused to consider a non-punitive letter issued in 1983 that was submitted as evidence to the BOI, which the BCNR evidently found persuasive.  See A.R. at 4-5 (reflecting Code JAM's assessment that the submission of this letter was "harmless error" because, inter alia, the BOI refused to consider it in rendering its findings and recommendations); id. at 7 (reflecting the BCNR's "substantial[] concur[rence] with the comments contained in [Code JAM's] advisory opinion").  Nothing in the administrative record suggests that the BOI rejected any other evidence of conduct by the plaintiff more than five years old at the time of the BOI's formation, and it is apparent from the record that the BOI considered such conduct in arriving at its findings and recommendations.  See supra part III.B.

17

Under the "familiar formula" first set forth in <u>Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.</u>, 467 U.S. 837 (1984), the Court will defer to an agency's interpretation of a statute only "if the statute is ambiguous and . . . the agency's interpretation . . . is reasonable." <u>Cal. Indep. Sys. Operator Corp. v. FERC</u>, 372 F.3d 395, 399 (D.C. Cir. 2004). "The call for deference is even greater where the agency is interpreting its own regulations," <u>Bush-Quayle '92 Primary Comm., Inc. v. FEC</u>, 104 F.3d 448, 452 (D.C. Cir. 1997), but courts will still reject an agency's interpretation of its own regulation "where such interpretation is unreasonable, plainly erroneous, or inconsistent with the regulation's plain meaning." <u>Via Christi Reg. Med. Ctr., Inc. v. Leavitt</u>, 509 F.3d 1259, 1272-73 (10th Cir. 2007); <u>see also</u> <u>Public Citizen, Inc. v. Mineta</u>, 343 F.3d 1159, 1166 (9th Cir. 2003) (same). In this case, the interpretation of SECNAVINST 1920.6B accepted by the BCNR below and advanced by the defendant on appeal contradicts the plain meaning of the regulation because it would prevent application of the regulation where conduct that occurred or was identified more than five years prior to the initiation of separation proceedings was the predominant but not exclusive reason for proceeding to separation. The Court therefore rejects it.

Giving the regulation the narrowest conceivable application consistent with its plain meaning, it must at least be clear from the record that time-barred conduct considered by a BOI in determining whether to recommend separation is not the primary reason for making that recommendation for the recommendation to comply with SECNAVINST 1920.6B. That determination cannot be made based on the administrative record in this case because the record simply does not indicate which, if any, of its findings of misconduct by the plaintiff were foremost in its members' minds when they voted to recommend separation. Consequently, it is

impossible to conclude, as the BCNR did in error, that the BOI's recommendation of separation

did not violate SECNAVINST 1920.6B. The Court therefore agrees with the plaintiff that the

BCNR acted in an arbitrary and capricious manner in denying his application for correction of his

naval records, see Calloway v. Brownlee, 366 F. Supp. 2d 43, 53 (D.D.C. 2005) ("an agency

action is arbitrary and capricious if the agency failed to follow procedure as required by law"),

and will grant the plaintiff's motion for summary judgment with respect to his claim that the

BCNR violated his rights under the APA.

C.    Remand

      While the Court agrees with the plaintiff that the BCNR's determinations "[were] the

result of a material legal error or injustice" and therefore must be set aside, Piersall v. Winter,

507 F. Supp. 2d 23, 29 (D.D.C. 2007) (internal quotation and citations omitted), it parts ways

with the plaintiff insofar as he requests that the Court instruct the BCNR to remove his

involuntary retirement at the grade of major from his record on remand. See Pl.'s Opp'n/Cross-

Mot. at 21 (requesting that the Court "compel[] the defendant to correct the plaintiff's military

records"). Pursuant to 10 U.S.C. § 1552, the defendant, acting through the BCNR, "may correct

any military record" when, in the defendant's judgment, it is "necessary to correct an error or

remove an injustice." Id. § 1552(a)(1). As the District of Columbia Circuit explained in Kreis v.

Secretary of Air Force, 866 F.2d 1508 (D.C. Cir. 1989), the defendant "may . . . have a reason for

considering that it is not necessary to alter an applicant's military record in order to correct even

an undisputed error or to remove even a conceded injustice." Id. at 1514. For example, "the

alteration of a record may correct one injustice only to commit another," or it may "incur some

other equally significant institutional cost." Id. The "balancing of [these] considerations is to be

done by [the defendant]" in the first instance, "free from judicial second-guessing" provided some reason is given "that a court can measure." Id.

The BCNR concluded (wrongly) that the BOI committed no error whatsoever in issuing its recommendation of separation. It has not had the opportunity to determine whether the error identified by the Court in this memorandum opinion warrants the removal of the plaintiff's involuntary retirement and grade reduction altogether. Ultimately, the Court may or may not find the BCNR's decision in this regard to have met the minimal procedural requirements necessary for affirmance, but it would be remiss to deny the BCNR the opportunity to make that determination in the first instance. The Court will therefore remand this case to the BCNR for further consideration as to whether the plaintiff's applications for correction of his military records should be granted in light of the Court's analysis in this memorandum opinion.

## IV. Conclusion

"The [C]ourt's ability to review matters related to military discharges is limited, as military personnel decisions themselves lie outside the [C]ourt's jurisdiction." Burt v. Winter, 503 F. Supp. 2d 388, 390 (D.D.C. 2007). The Court's decision today reflects those limitations. On the one hand, the legal errors committed by the BCNR in denying the plaintiff's applications for correction of his record require the reversal of the BCNR's decisions. At the same time, the Court is loathe to arrogate for itself the substantive determination as to whether the errors committed by the BOI in making its findings and recommendations warrants the relief requested by the plaintiff. Congress left that role to the defendant through his agent the BCNR, and it is to the BCNR that the Court now sends this matter for further proceedings consistent with this memorandum opinion.

**SO ORDERED** this 3rd day of April, 2008.[9]

REGGIE B. WALTON
United States District Judge

---

[9] An order denying the defendant's motion for summary judgment, granting in part and denying in part the plaintiff's cross-motion for summary judgment, entering final judgment in favor of the plaintiff, and remanding this case to the BCNR for further proceedings consistent with this memorandum opinion follows.